IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
NO. 2:04-CV-30-BO(1)

WILLIAM DARDEN,                      )
                                     )
          Plaintiff,                 )
                                     )
     v.                              )    DEFENDANT'S MEMORANDUM OF LAW
                                     )    IN SUPPORT OF ITS
                                     )    MOTION FOR SUMMARY JUDGMENT
                                     )
                                     )
MARYBETH PETERS,                     )
REGISTER OF COPYRIGHTS,              )
                                     )
          Defendant.                 )
                                     )

FILED

FEB 1 8 2005

US DISTRICT COURT, EDNC          CLERK
BY_____ DEP. CLK

     The Defendant, the United States of America, by and through the
United States Attorney for the Eastern District of North Carolina,
files this Memorandum in Support of its Motion for Summary Judgment,
pursuant to Rule 56 of the Federal Rules of Civil Procedure.

                    STATEMENT OF THE CASE

     Plaintiff asks this Court to set aside the Copyright Office's
decision to refuse registration for "Maps for APPRAISERSdotCOM" and
"APPRAISERSdotCOM."   The Office refused to register Plaintiff's
works because they lack the minimum amount of originality necessary
to be copyrightable and because Plaintiff seeks to register a claim
in subject matter that is not protected by copyright law.

     In this case, there is no evidence of any abuse of discretion.
The Office's determination that Plaintiff's works lack the minimum

                              1

amount of authorship necessary to support a copyright is not arbitrary or capricious. See Homer Laughlin China Co. v. Oman, 1991 WL 154540, 22 U.S.P.Q.2d 1074 (D.D.C. 1991) (upholding Register's refusal to register a copyright to a china pattern when challenged under the Administrative Procedures Act on the question of minimal amount of creative expression); see also Jon Woods Fashion, Inc. v. Curran, 1988 WL 38585, 8 U.S.P.Q.2d 1870 (S.D.N.Y. 1988).

This Court therefore should uphold the Register's determination that Plaintiff's works are not registrable as a reasonable application of copyright law that is not arbitrary, capricious or an abuse of discretion. Accordingly, Defendant's motion for summary judgment should be granted.

STATEMENT OF FACTS

A.   Plaintiff's Two Applications for Copyright Registration

On May 17, 2002, the Copyright Office received two Form VA applications, one for "APPRAISERSdotCOM" and one for "Maps for APPRAISERSdotCOM." (Administrative Record ("AR")55 & 215). In a letter dated May 30, 2002, Mr. Crist, a senior examiner in the Visual Arts Section, notified Plaintiff that neither of the works was eligible for registration. (AR 50-52). Then, at Plaintiff's request, the Copyright Office twice reconsidered its refusal to register Plaintiff's works and upheld that decision. Plaintiff's claim in Maps for APPRAISERSdotCOM is a subset of his claim in

2

APPRAISERSdotCOM because the maps in the former are identical to those in the latter.

       1.   <u>Initial Application for Registration of Both Works</u>

Plaintiff's application for Maps for APPRAISERSdotCOM ("the Maps work" or "Maps") identifies the nature of his work as "maps." (AR 215-A).[1] Maps are among the oldest categories of works that are eligible for copyright protection. However, Mr. Crist determined that the Maps work lacks the minimum amount of authorship that is necessary to support a copyright claim in a map, based on the information provided in the application. (AR 50).

In Section 6(a) of the VA application form, Plaintiff identified Maps as a derivative work. (AR 215-B). He described the preexisting work as "US Census black and white outline maps." <u>Id.</u> In addition, he identified the elements he added to the U.S. Census Bureau maps in order to create Maps as "font and color selection; visual effects such as relief, shadowing, and shading; labeling; call-outs." <u>Id.</u> Mr. Crist interpreted this to mean that the basic outline of each map was preexisting and that the claim of new authorship was in the "font and color selection; visual effects such as relief, shadowing and shading; labeling; [and] call-outs." (AR 50). Mr. Crist determined that the "visual effects" and the "labeling" for which Plaintiff claims protection are not

---

     [1] Where a document in the Administrative Record is double-sided, the front is referred to as ARxx-A, while the back is ARxx-B.

3

copyrightable because they are familiar and simple designs that are commonly used with maps. Therefore, the maps lack even a minimum level of creativity.

In general, the APPRAISERSdotCOM work consists of a series of Internet web pages displaying the same maps as contained in the work described above.[2] In Section 2(a), on his initial application to register APPRAISERSdotCOM, Plaintiff stated that he was claiming protection for a technical drawing. (AR 55-A). Mr. Crist, refused

---

[2] Regarding the APPRAISERSdotCOM work, Plaintiff submitted three versions of the Copyright Office's application form, Form VA. All three indicate in Section 1 that the nature of the work is "web pages." However, there are significant differences among them. First, the Office received Plaintiff's Form VA as part of a complete application for registration on May 17, 2002. (AR55-214). Mr. Crist reviewed the application and sent Plaintiff written notification of the decision to refuse registration for APPRAISERSdotCOM.

Second, Plaintiff responded with a letter dated July 29, 2002, that included a revised application Form VA. (AR43-49). It bears a date stamp indicating it was received by the Office on July 30, 2002. Under Section 2(a), he changed his selections on the nature of the authorship from "technical drawing" to "map" and "text" and added Plaintiff as a second author. (AR43-A & AR46). He also added "a more complete explanation of the material added to the work under Section 6(b)." (AR46). The explanation was changed from "graphics, text, colors, and arrangement" to read "Text and complication [sic], coordination, and arrangement of text, maps, graphics, and listing data." (AR43-B).

Finally, Plaintiff submitted a third version of his application that bears a date stamp indicating it was received in the Copyright Office on August 8, 2002. (AR 38-41). In the third version, Plaintiff changed Section 6(a) to read "Text; map designs and formats; compilation, formatting, [sic] and arrangement of text, maps, graphics, and listing data. No claim is made to the content of the listing data." (AR 39 & AR 40-B).

4

to register APPRAISERSdotCOM because there are no technical drawings in the material that Plaintiff submitted to identify the work. (AR 51). Plaintiff also indicated in the application that APPRAISERSdotCOM is a derivative work. In Section 6(a) of the application, he identified the preexisting aspects of APPRAISERSdotCOM as "clip art" and, as with Maps for APPRAISERSdotCOM, "US Census black and white outline maps." (AR 55-B). The new material that was added to the derivative work, and which is the basis of Plaintiff's copyright claim, is described in Section 6(b) of the application as "graphics, text, colors, and arrangement." Id.

With regard to Plaintiff's claim in "graphics," Mr. Crist stated that the deposit did not appear to contain any copyrightable graphics. He explained that copyright protection is not available for the format, layout or page design in APPRAISERSdotCOM. Mr. Crist noted that it was not clear what Plaintiff's claim for "arrangement" included. Although the work may be entitled to copyright protection, perhaps for compilation authorship as a claim for text or for selection and arrangement of preexisting materials, Plaintiff's claim must be denied because of his description of the nature of his claim. He explained that a claim for a "technical drawing," "graphics," or "colors" obscured Plaintiff's claim to subject matter in APPRAISERSdotCOM that may be entitled to copyright protection. Mr. Crist advised Plaintiff that if a claim of

5

authorship in the text or in a compilation was intended, the application must either be amended or a new application submitted. (AR 51).

      2.   <u>First Request for Reconsideration</u>

In a letter dated July 29, 2002, along with an informal request for reconsideration, Plaintiff provided additional information and revised his application for the Maps. (AR 43-44). In a letter dated August 21, 2002, he submitted a formal request for reconsideration. (AR 32-36).

In support of his arguments that his contributions to the maps were "original and creative," Plaintiff submitted the sworn declaration of Sean Pecor who had done work on the maps for Plaintiff. (AR 49). While admitting that Mr. Pecor used the outlines of maps from the U.S. Census Bureau, Plaintiff stated that Mr. Pecor had to "resize the maps and redraw many of the anti-aliased lines." (AR 38 & 49). He also "manually created a three-dimensional effect by repeating each outline several times" and chose the map colors, fonts, labeling, and call-outs. <u>Id.</u>

In a letter dated November 29, 2002, Ms. Giroux notified Plaintiff of the Office's decision to again refuse registration for the Maps Work. (AR 27-31). She stated that it did not contain any authorship that was copyrightable. <u>See</u> <u>id.</u> Ms. Giroux explained that in <u>Feist Pub., Inc. v. Rural Tel. Serv. Co.</u>, 499 U.S. 340

6

(1991), the Court held that the "sweat of the brow" theory was not an appropriate basis for copyrightability. (AR 28).

She also explained that, in the case of Maps, since Plaintiff's map drawings are taken from preexisting Census Bureau maps, copyright protection extends only to the additions or changes appearing in the work for the first time. Citing to Office practices, Compendium of Copyright Office Practices II, §§ 305.06-305.07 (1984) (hereinafter, Compendium II), she noted that where the new material "consists solely of uncopyrightable elements such as a change of layout, format, size, spacing or coloring, registration is not possible." (AR 27-28). She found that additions, such as "labeling," and "call-outs," failed to provide sufficient authorship to sustain a claim to copyright. (AR 30).

With regard to the APPRAISERSdotCOM work, in the August 7, 2002 letter, that accompanied the third Form VA application, Plaintiff's attorney stated, "Mr. Darden is seeking to claim the formatting, compilation, and arrangement of the graphics, text, and maps. In this registration, he is not seeking to claim the compilation of data tables." (AR 39). Plaintiff argued that the "compilation and arrangement of the maps, text, graphics and data constitutes an original work of authorship." (AR 34).[3]

---

[3] Plaintiff also argued that the authors of the work "independently compiled, formatted, and arranged the text, maps, graphics, and listing data that comprise the deposit material" for APPRAISERSdotCOM. (AR 35). Plaintiff stated that the authors were not claiming protection for the "content of the data

7

In her response to the request for reconsideration, Ms. Giroux informed Plaintiff that his works are not copyrightable because they do not contain any authorship that satisfies the minimum requirement for creativity, citing Feist. (AR 28). However, Ms. Giroux invited Plaintiff to resubmit an application to register APPRAISERSdotCOM for a copyright claim in "text and compilation of data." She advised him that "some text and compilation data in the work entitled APPRAISERSdotCOM" may be copyrightable, were he to make such a claim. (AR 27 & 31).

   3.   Second Request for Reconsideration.

In a letter dated April 30, 2003, Plaintiff submitted a second request for reconsideration to the Copyright Office Board of Review,[4] in which he reiterated the arguments made in the first

---

listings," but, rather, were seeking protection for the "format of such listing and how such listings are arranged or compiled in relation to the graphics, text, and maps." (AR 35). While admitting that the content of the data listings of the deposit material is not the same as what was first published in December 1999, Plaintiff stated that since the claim is not for such "content," it was not necessary to recover the exact data listings as originally published in 1999. Id.

   [4] The Office has published changes to its proceedings for seeking administrative review of agency decisions, including changing the name of the Board of Appeals to the Review Board. Agency review proceedings are now called reconsiderations, instead of appeals. However, in this brief, Board of Appeal and appeal may be used interchangeably with Board of Review and reconsideration due to the fact that original documents sometimes use the previous terms, including Plaintiff's written submissions to the Copyright Office.

8

request for reconsideration along with some additional points.[5] (AR 19-26). He also noted that he was not seeking protection for one particular design element of Maps, nor for protection of "simple combinations" of elements such as "familiar shapes, symbols, and designs; mere variations of typographic ornamentation, lettering, fonts or coloring." Rather, he sought protection of "the overall pictorial expressions of his maps." (AR 20).

The Board of Review carefully considered all the material and arguments Plaintiff presented. (AR 1-16). The maps that make up the Maps Work are blue-colored representations of the United States and individual states. (AR 216-273). The outlines of these maps are based on preexisting United States census maps. (AR 33). The first map is a representation of the entire United States, with representations of Alaska and Hawaii placed below the continental United States. (AR 216). It is divided into states with either white lettered postal abbreviations centered on the applicable state or, for the smaller states where this procedure is impossible without altering the regular font size, black call-outs with white lettered postal abbreviations pointing to white circles within the states.

_____

[5] On March 14, 2003, the Copyright Office granted Plaintiff's request for a thirty-day extension of time in order to file a second request for reconsideration for each of the refused applications. (AR 17-18).

9

Each of the remaining maps is a representation of each of the states, in the same contour as the first map, enlarged with subdivisions for each of the counties within that state. The full county names are centered in each county in white letters with initial caps, in some cases hyphenated to accommodate the space, or in other cases where the county is too small, by call-outs identical to the first map described. There is slight shading apparent on the borders of the overall representations as well as in the boundaries of the states or counties.

The Board agreed with Plaintiff that the requisite level for originality is low; however, it noted that <u>Feist</u> makes clear that there are works that fail to satisfy even the requisite low level of creativity. The Board determined that Plaintiff's maps belong in the latter category. The Board concluded that the maps are representations of preexisting census maps "in which the creative spark is utterly lacking or so trivial as to be virtually nonexistent." <u>Feist</u>, 499 U.S. at 359. After reviewing the individual features of the work, the Board determined that none of them exhibits enough creativity to support copyright. (AR 7).

With regard to plaintiff's request regarding APPRAISERSdotCOM, after considering all of Plaintiff's arguments urging registration and the supporting material, the Board of Review ruled that Plaintiff's claim was not entitled to be registered. (AR 1-16). As discussed above, the maps incorporated into APPRAISERSdotCOM are

not copyrightable.  Also, the Board concurred with Ms. Giroux and Mr. Crist that, while there may be copyrightable elements in the work, Plaintiff's application must be denied because the scope of his claim is too broad; it includes subject matter that is not protected by copyright law.  (AR 11-12).

Accordingly, the Board of Review affirmed the denial of registration of the claim for both works.

B.    The Complaint

On September 7, 2004, Plaintiff, William Darden, filed a complaint against the Register pursuant to the APA, alleging that he "is dissatisfied with the decision of Defendant" and that "Defendant has erroneously refused" to register his works.  Compl. at ¶¶ 16 and 18.  Plaintiff seeks an order compelling Defendant to register his works, APPRAISERSdotCOM and Maps for APPRAISERSdotCOM. See id. at ¶¶ A and B.

ANALYSIS

A.    Statutory and Regulatory Framework Governing Refusals of Registration

    1.    The Copyright Act Delegates to the Register The Duty to Determine Copyrightability and to Issue Regulations Regarding Registration

Copyright law vests the Register with the duty to determine whether material deposited for registration constitutes copyrightable subject matter.  See 17 U.S.C. § 410(a).  Section 410(b) states,

11

> In any case in which the Register of Copyrights
> determines that, in accordance with the provisions of
> this title, the material deposited does not constitute
> copyrightable subject matter or that the claim is invalid
> for any other reason, the Register shall refuse
> registration and shall notify the applicant in writing of
> the reasons for such refusal.

17 U.S.C. § 410(b).

Congress authorized the Register to issue regulations "not inconsistent with law for the administration of the functions and duties made the responsibility of the Register under this title." 17 U.S.C. § 702. Pursuant to that authority, the Register establishes the procedures to register a copyright, see 17 C.F.R. § 202.3, as well as regulations that interpret legal requirements to identify what subject matter is copyrightable and what is not, see 37 C.F.R. §§ 202.1, 202.10 (discussed infra, at A.2).

> 2. The Copyright Office's Interpretations of the Originality Requirement

In order to be copyrightable, a work must be original:

> [t]he *sine qua non* of copyright is originality. To
> qualify for copyright protection, a work must be original
> to the author. Original, as the term is used in
> copyright, means only that the work was independently
> created by the author (as opposed to copied from other
> works), and that it possesses at least some minimal
> degree of creativity.

Feist, 499 U.S. at 345 (holding that white pages lacked minimal degree of creativity necessary for copyright)(citations omitted). "Originality is a constitutional requirement. The source of Congress' power to enact copyright laws is Article I, § 8, cl. 8, of the Constitution, which authorizes Congress to 'secure for

12

limited Times to Authors ... the exclusive Right to their respective Writings.'" Id. at 346. "The primary objective of copyright is not to reward the labor of authors, but '[t]o promote the Progress of Science and useful Arts.'" Id. at 349.

While the Supreme Court has stated that "the requisite level of creativity is extremely low; even a slight amount will suffice," the Court also has held that there "remains a narrow category of works in which the creative spark is utterly lacking or so trivial as to be virtually nonexistent." Feist, 499 U.S. at 345,359. In Feist, the Court found that the white pages listing of telephone numbers did not meet the minimum standards for copyright protection. Id. at 363. It characterized the arrangement as "typical," "an age-old practice, firmly rooted in tradition and so commonplace that it has come to be expected as a manner of course." Id. at 363.

Consistent with its delegated authority, the Office's regulations for the copyrightability of "pictorial, graphic, and sculptural works" incorporate the Supreme Court's standards for originality. See 37 C.F.R. § 202.10(a). The Office's regulations also identify what does not have copyright protection, including "[w]ords and short phrases such as names, titles, and slogans; familiar symbols or designs; mere variations of typographic ornamentation, lettering or coloring; mere listing of ingredients or contents." See 37 C.F.R. § 202.1(a).

13

Based upon its expertise in this area, the Copyright Office consistently has considered a common geometric shape, or a simple combination of two or three shapes, to fail to contain sufficient creative expression for copyright protection. The Compendium of Copyright Office Practices contains this statement regarding the minimum standard of originality for pictorial or graphic material:

> A certain minimal amount of original creative authorship is essential for registration. . . . Copyrightability depends upon the presence of creative expression in a work, and not upon aesthetic merit, commercial appeal, or symbolic value. Thus, registration cannot be based upon the simplicity of standard ornamentation such as chevron stripes, the attractiveness of a conventional fleur-de-lys design, or the religious significance of a plain, ordinary cross. Similarly, it is not possible to copyright common geometric figures or shapes such as the hexagon or the ellipse, a standard symbol such as an arrow or a five-pointed star. Likewise, mere coloration cannot support a copyright even though it may enhance the aesthetic appeal or commercial value of a work. For example, it is not possible to copyright a new version of a textile design merely because the colors of red and blue appearing in the design have been replaced by green and yellow, respectively. The same is true of a simple combination of a few standard symbols such as a circle, a star, and a triangle, with minor linear or spatial variations.

Compendium II, § 503.02(a) at 500-3 (1984).[6]

_____

[6] Compendium II sets forth the Copyright Office's interpretations of copyright law and regulations for examining and registering works. See 37 C.F.R. § 201.2(b)(7). Courts generally defer to the interpretations found in Compendium II. See, e.g., Batjac Prod., Inc. v. GoodTimes Home Video Corp., 160 F.3d 1223, 1230-31 (9th Cir. 1998); Natkin v. Winfrey, 111 F. Supp. 2d 1003, 1010 (N.D. Ill. 2000); Compuware Corp. v. Serena Software Int'l, Inc., 77 F. Supp. 2d 816, 822 (E.D. Mich. 1999); Jon Woods, 8 U.S.P.Q.2d at 1872.

B.   **This Court Should Grant Summary Judgment to the Register**
     **Because Her Decision Fully Complies with the APA,**
     **Copyright Law and Regulations**

1.   **The Scope of Review Is the APA Abuse of Discretion**
     **Standard for Informal Adjudications**

Copyright law provides that actions taken by the Register are subject to review under the APA.   See 17 U.S.C. § 701(e).   A reviewing court can "set aside agency action [under the APA] if it appears in the record that such action is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.'" Duke Power Co. v. U.S. Nuclear Regulatory Comm'n, 770 F.2d 386, 389 (4th Cir. 1985) (quoting 5 U.S.C. § 706(2)(A)).   "[T]he court should make a 'searching and careful' inquiry of the record in order to ascertain whether the agency decision 'was based on a consideration of the relevant factors.'"   Id. at 390 (quoting Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971); see 5 U.S.C. § 706.

"Under the APA, a federal court may set aside an agency's findings, conclusions or actions only if they are 'arbitrary, capricious, an abuse of discretion,...'" or  "'... otherwise not in accordance with the law.'" Supreme Oil Co. v. Metropolitan Transp. Authority, 157 F.3d 148, 151 (2d Cir. 1998).   "Review under [the APA] is 'narrow,' limited to examining the administrative record ... ." Natural Resources Defense Council, Inc. v. Muszynski, 268 F.3d 91, 97 (2d Cir. 2001) (citations omitted); see also Roberts v. Morton, 549 F.2d 158, 160 (10th Cir. 1976) (judicial review confined

15

to administrative record); see gen., State of New York Dep't of Social Services v. Shalala, 21 F.3d 485, 492 (2d Cir. 1994).

Under the abuse of discretion standard, "the Register's decision is entitled to great weight by the reviewing court. Courts may not substitute their own judgment even though differing results may well be reasonable." Custom Chrome, 35 U.S.P.Q.2d at 1717, (citing Chevron U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837, 843-44 (1984)). "[T]he Register, who must make such determinations [of copyrightability] on a daily basis, is possessed of considerable expertise in this area." Id.

When reviewing an agency's decision, the scope of the review is narrow and the court will "look only to see if there has been a 'clear error of judgment.'" Hughes River Watershed Conservancy v. Johnson, 165 F.3d 283, 287 (4th Cir. 1999) (citing Marsh v. Oregon Natural Resources Council, 490 U.S. 360, 378 (1989)). Although the court's "inquiry into the facts is to be searching and careful, this court is not empowered to substitute its judgment for that of the agency." Id. at 288 (citation omitted).

Under the APA, absent an abuse of discretion, courts must not set aside the Register's refusal to register a work. See, e.g., OddzOn Products, 924 F.2d at 347 (upholding refusal to register "KOOSH" ball); Custom Chrome, 35 U.S.P.Q.2d at 1716 (citation omitted); Homer Laughlin, 22 U.S.P.Q.2d at 1076 (upholding refusal

to register a copyright to a china pattern); <u>Jon Woods</u>, 8 U.S.P.Q.2d at 1871-1872 (upholding refusal to register fabric design).

    2.  <u>Standards for Interpretation of the Copyright Act</u>

A court's first step in reviewing an agency's interpretation is to determine "whether Congress has directly spoken to the precise question at issue." <u>Chevron</u>, 467 U.S. at 842. "If the intent of Congress is clear, that is the end of the matter." <u>Id</u>. If, however, the statute being applied does not itself answer the precise question, then the court must determine the level of deference to accord to the agency's interpretation. <u>See</u> <u>United States v. Mead Corp.</u>, 533 U.S. 218, 236 (2001). Where Congress has delegated authority to an agency to implement a statute, the court must accord "<u>Chevron</u>" deference to the agency's statutory interpretation. <u>See</u> <u>id.</u> at 225-31.

"A regulation, of course, is presumptively valid and ordinarily should be upheld unless it is inconsistent with the statute." <u>Hoffenberg v. Kaminstein</u>, 396 F.2d 684, 685 (D.C. Cir. 1967) (upholding Register's refusal to register a work). In examining whether the regulation used to interpret the statute is based on a permissible construction, the court "need not conclude that the regulation in question is the only, or even the best possible means of implementing the statute." <u>Allen v. United States</u>, 173 F.3d 533, 537 (4th Cir. 1999).

17

"[I]n determining creativity, such a decision necessarily requires the exercise of informed discretion, and the Register, in part due to having to make such determinations on a daily basis, is generally recognized to possess considerable expertise over such matters." Homer Laughlin, 22 U.S.P.Q.2d at 1075 (citing Norris Industries, Inc. v. Int'l Tel. & Tel. Co., 696 F.2d 918, 922 (11th Cir. 1983).

> Since the applicant can gain full judicial review of copyrightability in an infringement action, the costs of forcing too fine an analysis and too extensive an explanation of a denial of registration are not worth the benefits – particularly when reviewing a question which has unavoidably subjective aspects such as how much creativity is sufficient to force the Copyright Office to register a proffered work.

Homer Laughlin, 22 U.S.P.Q.2d at 1075; see also Esquire v. Ringer, 591 F.2d 796, 800 (D.C. Cir. 1978) (upholding Register's interpretation of its own regulation, 37 C.F.R. § 202.10(c), as "reasonable and well-supported").

The D.C. Circuit stated in Esquire that:

> Considerable weight is to be given to an agency's interpretation of its regulations. "[T]he ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation." This is particularly so if an administrative interpretation relates to a matter within the field of administrative expertise and has been consistently followed for a significant period of time.

591 F.2d at 801(citations omitted).[7]

---

[7] Congress has broadly defined what categories of works may be copyrightable, but it has left particular determinations

The D.C. Circuit additionally noted that even some inconsistencies in the Register's decisions to register are not sufficient to undermine the deference owed to the Register's determinations:

> The Register's test requires the application of subjective judgment, and given the large volume of copyright applications that must be processed there may be some results that are difficult to square with the denial of registration here. But this does not mean that the Register has employed different standards in reaching these decisions.

_Esquire_, 591 F.2d at 802. Finally, the "Register's decision is entitled to heightened deference where . . . it is based on two reviews of the same copyright application." _Jon Woods_, 8 U.S.P.Q.2d at 1872.

        3.    <u>The Register's Determination that the Works Lack the Minimal Amount of Original Artistic Material to Be Copyrightable Is Entitled to Deference and Plaintiff's Arguments Lack Merit</u>

The Copyright Office reviewed Plaintiff's works three times. At each level of review it provided an increasingly detailed explanation of the reasons for refusing registration. The decisions set forth the criteria by which Plaintiff's works were judged and

---

regarding individual works to the Register, via the registration process, and to the courts. <u>See</u> 17 U.S.C. §§ 102(a), 410. Accordingly, the Register's interpretation of its regulations is entitled to "<u>Chevron</u>" deference. <u>See Chevron</u>, 467 U.S. at 843; <u>see also</u>, <u>Thomas Jefferson University v. Shalala</u>, 512 U.S. 504, 512 (1994) (internal citations omitted); <u>Rust v. Sullivan</u>, 500 U.S. 173, 184 (1991); <u>Satellite Broad. & Communications Ass'n v. FCC</u>, 275 F.3d 337, 369 (4th Cir. 2001).

the facts that were the basis for the refusals to register.[8]   In particular, the final letter of refusal from the Copyright Office Board of Review provides evidence that the law was reasonably applied to the facts presented and that the decision is not arbitrary, capricious or an abuse of discretion.  Thus, the Office's decision is entitled to "heightened deference."   <u>Jon Woods,</u> 8 U.S.P.Q. 2d at 1872.  The works presented to the Copyright Office are not entitled to registration.  Thus, this court should uphold the Register's decision.

      a.   <u>Maps for APPRAISERSdotCOM Lacks Sufficient</u>
           <u>Creativity to be Copyrightable</u>

Plaintiff's argument, that Maps has the minimum amount of authorship necessary to support copyright registration, is without merit.  By Plaintiff's own admission, the maps contained in this work are all reproduced from preexisting census maps.

The Board of Review determined that the maps lacked even the low level of originality required by <u>Feist</u> because the creative spark "is utterly lacking or so trivial as to be virtually nonexistent." <u>Feist</u>, 499 U.S. at 359. Using blue color in a map is not creative, nor is the shading on the boundaries of the regions. <u>Compendium II</u>, § 503.02 (a).  The Board also determined that the

_____

[8] Plaintiff argued that copyright law's merger doctrine should not bar his works from being registered.  However, the Copyright Office did not deny registration on the basis of the merger doctrine.  Therefore, Defendant does not discuss the merger doctrine here.

lettering and placement of names on the maps, which are generally centered within each region, is "garden variety." The use of call-outs is dictated by necessity and functionality rather than by creativity. Additionally, the call-outs are standard shapes and features that are uncopyrightable. 37 C.F.R. § 202.1(a). None of these individual features displays the requisite level of creativity to support a copyright claim.

As Plaintiff asserted, however, copyright protection in maps must be evaluated by looking at the work as a whole. See, e.g., Atari Games Corp. v. Oman, 888 F.2d 878, 883 (D.C. Cir. 1989). It is standard practice for the Copyright Office to evaluate works of every type as a whole, including maps, and it did so in this case.

The Board of Review examined whether all of the individual elements as a whole provided the requisite level of creativity to register the Maps work and found the combination of the names, call-outs, shading and color to be "entirely typical." As such, reviewing the work as a whole did not provide the requisite level of creative authorship necessary to sustain copyright in a map or any other work, a conclusion well supported by case law. See Feist, 499 U.S. at 362, see also Homer Laughlin, 22 U.S.P.Q.2d at 1076 (simple variations, combinations of geometric designs not copyrightable); Magic Marketing, Inc. v. Mailing Servs. of Pittsburgh, Inc., 634 F. Supp. 769, 772 (W.D. Pa. 1986) (same for

envelopes with black lines and words "gift check" or "priority message").

Originality requires a design to constitute more than a trivial variation of public domain elements. See Alfred Bell & Co. v. Catalda Fine Arts, Inc., 191 F.2d 99, 103 (2d Cir. 1951); see also, John Muller & Co., 802 F.2d at 990 (holding that logo, consisting of four angled lines forming an arrow, with the word "arrows" in cursive script, was not copyrightable); Florabelle Flowers, Inc. v. Joseph Markovits, Inc., 296 F. Supp. 304, 307 (S.D.N.Y. 1968); Forstmann Woolen Co. v. J.W. Mays, Inc., 89 F. Supp. 964, 971 (E.D.N.Y. 1950) (no creative originality in three evenly spaced fleur-de-lys interwoven with the words "Forstmann's 100% Virgin Wool").

In addition, when preexisting materials, which are not copyrightable, are incorporated into a work, the Office also analyzes the work to determine whether the elements are "selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." Feist, 499 U.S. at 356. The Board determined that there is no creativity in the selection, coordination or arrangement of the maps because Plaintiff included all of the states in the country and all of the counties within each state. Including every component of a limited universe is not copyrightable because such an obvious mechanical choice does not reflect any judgment.

Listing the states in alphabetical order is the identical arrangement that the Supreme Court described as "garden variety" in Feist. Arranging the state maps in relation to each other according to their contiguous or noncontiguous borders is also a garden variety arrangement. Further, selecting blue as the color for all the maps does not provide the requisite modicum of creativity necessary to transform mere selection into copyrightable expression. See 37 C.F.R. § 202.1(a); see also United States v. Hamilton, 583 F.2d 448 (9th Cir. 1978) (discussing copyrightability of maps). The combined authorship reflected in these obvious arrangements is below the level of creativity that is required for works to be entitled to copyright protection.

      b.   The APPRAISERSdotCOM Work Is Also Not Entitled to Registration Because It Lacks the Minimum Creativity Necessary and Because Plaintiff Seeks to Register Subject Matter That Is Not Copyrightable

For the reasons stated above, the maps in APPRAISERSdotCOM are not copyrightable because they are identical to the maps in Plaintiff's other work, Maps for APPRAISERSdotCOM. As discussed, their selection, coordination or arrangement is not even minimally creative.

Notwithstanding the works' lack of minimal creativity, the Board of Review refused to register APPRAISERSdotCOM because the scope of Plaintiff's claim in Section 6(b) is too broad. The final revision of his written application, Form VA, which was received by the Office on August 8, 2002, stated that he was claiming protection

23

in "text: map designs and formats; compilation, formatting, [sic] and arrangement of text, maps, graphics, and a listing data. No claim is made to the content of the listing data." (AR 40-B).

In Plaintiff's revised application, he explained that his claim for standard graphics and text is largely a claim for the "formatting of an Internet web page." (AR 19). However, a copyright does not protect the format or layout of text. See Compendium II, § 305.06.

In its refusal to register Plaintiff's work, the Board analogized the layout and format of an Internet web page, such as APPRAISERSdotCOM, to the layout and format of book covers and pages. While a page in a book may contain copyrightable expression, e.g., text, pictures or other graphics, the copyright does not extend to the format or layout of the pages.

Although some selection, coordination and arrangement of elements may be copyrightable, not "every selection, coordination, or arrangement will pass muster." Feist, 499 U.S. at 358. (emphasis added). As the Court stated in Feist, facts are never original. See id. Consistent with that, 17 U.S.C. § 102(b) prescribes what subject matter is not copyrightable. Formatting, along with ideas and concepts, cannot be copyrighted. It has been a longstanding practice of the Copyright Office "to deny registration of the arrangement of elements on the basis of physical or directional layout in a given space, whether that space is a

24

sheet of paper or a screen of space meant for information displayed digitally. 17 U.S.C. § 102(b)." (AR 11).

In 1981, the Office invited public comment on this policy for the design aspects of materials with text, such as books, periodicals, pamphlets and brochures. See 46 FR 30651-01 (June 10, 1981). At the conclusion of the administrative proceedings, the Office observed that "the arrangement, spacing, or juxtaposition of text matter which is involved in book design falls within the realm of uncopyrightable ideas or concepts." Id. at 30653.

The same principle is applicable to the protection of the design, format and layout of web pages. While a web page generally contains copyrightable expression, the formatting, arrangement, spacing and layout is a finite system of expression. To extend copyright protection to format and layout for text would unacceptably constrain the means of expression on web pages. This is not to say that compilation authorship is unavailable to web pages. The selection, coordination and arrangement of material, whether preexisting or original, may be protected if it is accomplished *in such a way that* the resulting work as a whole constitutes an original work of authorship. See 17 U.S.C. § 101 (definition of a "compilation") (emphasis added). However, the layout and formatting of a web page, itself, does not constitute "such a way" to achieve an original work of authorship. Rather compilation authorship that is available for a web page is limited

to the original selection, coordination and arrangement of groupings of works or the elements or data contained within a work.[9]

The Board refused registration for APPRAISERSdotCOM on the basis of another fundamental tenet of copyright law: protection does not extend to short phrases or familiar symbols and designs. See 37 C.F.R. § 202.1(a). The Board determined that the graphics and text in APPRAISERSdotCOM are merely short phrases and familiar symbols that lack sufficient creativity to be copyrightable. (AR 9-10).

As previously discussed, however, copyright protection may extend to an author's selection, coordination or arrangement of otherwise uncopyrightable subject matter, including short phrases and familiar symbols or designs, when there is a sufficient level of creativity. Consequently, the Board stated in its written decision that some of the text, and perhaps also, graphic or pictorial matter within APPRAISERSdotCOM'S web pages may be copyrightable on that basis.

However, the Board also expressed concern that the identifying material Plaintiff provided for APPRAISERSdotCOM may not be acceptable as an accurate representation of whatever copyrightable material might be present. It is unclear whether the identifying

---

[9] To hold otherwise would run the risk of expanding copyright protection to concepts and common expression that is properly part of the public domain. See Nichols v. Universal Pictures Corp., 45 F.2d 119, 121 (2d Cir. 1931); see also Satava v. Lowry, 323 F.3d 805, 813 (9th Cir. 2003)

26

deposit material satisfies the registration requirement that it must be identical to the copyrightable expression that existed on the work's publication date. (AR 11-12). Cf., Proulx v. Hennepin Technical Centers District No. 287, 1981 WL 1397 at *5-6 (D. Minn. 1981)(noting that Register had authority to insist that registration application and deposit be consistent).

A copyright claim is necessarily limited to the accompanying material submitted by an applicant. Consequently, the failure to provide a copy of the work as it existed on its publication date is a material defect in the application. Here, the Board noted that Plaintiff repeatedly asserted that "no claim is made to the content of the data" and that "[a]pplicant does not seek copyright protection for the content of the data listings," but rather that he "only seeks protection for the format of such listing and how such listings are arranged." (AR 35, 39, 46). Clearly, Plaintiff intended to claim the format and layout of the web page, rather than the actual material selected and arranged. As stated above, such a claim is unfounded. Therefore, to obtain the protection of potentially copyrightable subject matter, in addition to resubmitting an application, the Board concluded that an acceptable deposit would also be required to identify any claim in text, graphic or pictorial material.

27

c.  Commercial Success of Works Is Irrelevant to
Considerations of Copyrightability

There is no merit to Plaintiff's reliance upon any alleged commercial success of the works in support of his applications, as commercial success is not in any way relevant to a determination of copyrightability.  In Feist, the Supreme Court expressly rejected the "sweat of the brow" or "industrious collection" doctrine, that made copyright protection a "reward for the hard work" that went into producing the subject matter.  499 U.S. at 352; see also Homer Laughlin, 22 U.S.P.Q.2d at 1076 (rejecting commercial success as relevant).  Another United States District Court rejected the relevance of commercial success to copyrightability stating that:

> Works may experience commercial success even without originality and works with originality may enjoy none whatsoever.  Nothing has been presented to us showing any correlation between the two.  Moreover, under Morelli's theory a work may not be copyrightable at one point when it enjoys no sales but may later become copyrightable if it experiences an upswing in economic fortune.  This cannot be. A work is either original when created or it is not.  Evidence of commercial success simply does not have "any tendency to make the existence of any fact that is of consequence to the determination of [copyrightability] more probable or less probable than it would be without the evidence."

Paul Morelli Design, 200 F. Supp.2d 482, 488-489 (E.D. Pa. 2002)(citing Fed. R. Evid. 401).  Therefore, there was no abuse of discretion in the fact that the Register did not consider the commercial success or popularity of these works.

28

## CONCLUSION

For the foregoing reasons, Defendant's cross-motion for summary judgment should be granted.

Respectfully submitted this 18th day of February, 2005.

FRANK D. WHITNEY
United States Attorney

BY: _____
LORA M. TAYLOR
Assistant United States Attorney
Civil Division
310 New Bern Avenue
Suite 800, Federal Building
Raleigh, NC 27601-1461
Telephone: (919) 856-4907
FAX:       (919) 856-4821

PETER D. KEISLER
Assistant Attorney General

_____
JOHN FARGO, Director
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, DC 20530
Telephone: (202) 514-7223
FAX:       (202) 307-0345

OF COUNSEL:

DAVID O. CARSON
General Counsel
U.S. Copyright Office
MARILYN J. KRETSINGER
Associate General Counsel
RENEE COE
Senior Attorney
U.S. Copyright Office

Attorneys for Defendant

<u>CERTIFICATE OF SERVICE</u>

I do hereby certify that I have this 18th day of February, 2005, served a copy of the foregoing upon the below listed party by placing a copy of the same in the U.S. Mails, addressed as follows:

ANTHONY J. BILLER
DAVID E. BENNETT
COATS & BENNETT, PLLC
1400 Crescent Green, Suite 300
Cary, NC 27511
Telephone: (919) 854-1844
Facsimile: (919) 854-2084

_____
Assistant United States Attorney
Civil Division

30

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
NO. 2:04-CV-30-BO(1)

WILLIAM DARDEN,                    )
                                   )
            Plaintiff,             )
                                   )
      v.                           )      DECLARATION OF JOHN FARGO
                                   )      REGARDING SUBMISSION OF
                                   )      ADMINISTRATIVE RECORD ON
                                   )      COMPACT DISC IN LIEU OF
                                   )      HARD COPIES
MARYBETH PETERS,                   )
REGISTER OF COPYRIGHTS,            )
                                   )
            Defendant.             )
                                   )

### DECLARATION OF JOHN FARGO

Pursuant to 28 U.S.C. § 1746, I, John Fargo,
declare and state as follows:

1.    I am the Director of the Intellectual Property Staff of
      the Commercial Litigation Branch, Civil Division,
      Department of Justice.

2.    At my direction, a color scanned copy was made of the
      Administrative Record that had been previously compiled
      and produced to plaintiff in this case.  This copy is
      contained on the accompanying Compact Disc (CD) in
      Adobe .pdf format.

3.    The copy contained on the is an accurate copy of the
      Administrative Record.

-1-

4. For convenience, I have added Bookmarks and an index which correspond to the listing of items on the Table of Contents contained in the initial certification page.

5. After reducing the records to the CD, I transmitted same to Ms. Lora Taylor, Assistant U.S. Attorney, by Federal Express at 310 New Bern Avenue, Suite 800, Federal Building, Raleigh, North Carolina 27601.

6. It is my belief that the material on the CD constitutes a true and correct copy of the Administrative Record, as kept in the ordinary course of business of the Register of Copyrights.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this *16th* day of February, 2005.

JOHN FARGO
Director,
Commercial Litigation Branch
Department of Justice
Washington, DC 20530
Telephone: (202) 514-7223
Facsimile: (202) 307-0345