IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
NO. 2:04-CV-30-BO(1)

FILED

MAR 1 8 2005

US DISTRICT COURT, EDNC          L. CLERK
BY _____ DEP. CLK

WILLIAM DARDEN,                    )
                                   )
          Plaintiff,               )
                                   )
     v.                            )     DEFENDANT'S MEMORANDUM OF LAW
                                   )     IN OPPOSITION TO PLAINTIFF'S
                                   )     MOTION FOR SUMMARY JUDGMENT
                                   )
                                   )
MARYBETH PETERS,                   )
REGISTER OF COPYRIGHTS,            )
                                   )
          Defendant.               )
                                   )

The Defendant, the United States of America, by and through the United States Attorney for the Eastern District of North Carolina, files this Reply in Opposition to Plaintiff's Motion for Summary Judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

In this case, the Court must review the Register's decision to refuse to register Plaintiff's two works, AppraisersDOTcom and Maps for AppraisersDOTcom, to determine whether that refusal was arbitrary, capricious or an abuse of discretion, based upon the Administrative Record before the Copyright Office. The Register's decision is reasonable since Plaintiff's works are clearly not copyrightable. Defendant, therefore, is entitled to judgment as a matter of law. Likewise, granting Plaintiff's Motion for Summary Judgment would be contrary to law.

1

I.  **The Copyright Office's Rejection of Plaintiff's Works Is a Reasonable Exercise of Its Discretion**

A.  **Standard of Review**

Plaintiff asserts that this Court should review Plaintiff's application for registration *de novo*.  This assertion is contrary to the principles of judicial review under the Administrative Procedures Act (APA).  "*De novo* review is unwarranted . . . since the court must focus on administrative action which was clearly documented prior to the start of the litigation."  National Center for Preservation Law v. Landrieu, 496 F.Supp. 716, 724 (D.S.C. 1980) (citations omitted) (relying upon Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402 (1971)).  Moreover, the standard of review of a refusal to register under the APA is a deferential "abuse of discretion" one.  In applying this standard, the Supreme Court has held that "a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency."  Chevron U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837, 844 (1984).

In determining whether to register a work, the Copyright Office applies copyright law to the facts before it, and is vested with a fair amount of discretion, reflecting its long-recognized expertise in administering the registration process. Esquire, Inc. v. Ringer, 591 F.2d 796, 805-06 (D.C. Cir. 1978); see also, Eltra

Corp. v. Ringer, 579 F.2d 294, 297-98 (4th Cir. 1978). If, as here, the Copyright Office's application of undisputed law to the facts reflected in the record is reasonable, then there is no abuse of discretion.

## B. The Copyright Office's Interpretation of the Statutory Requirement of Originality Is Reasonable and Entitled to Deference

Citing 17 U.S.C. §§ 101-103, Plaintiff implies that the Copyright Office's interpretations are not entitled to deference because the Copyright Office wrongly interpreted the plain meaning of the statute when it refused to register his works. He states that Congress "unambiguously set forth [in the statute] what is copyrightable." Plaintiff's Mem. in Supp. of Mot. for Summ. J. (Pl. Mem.), at 7. While the Copyright Office does not dispute that copyright law extends protection to maps that are original works of authorship, the statute does not directly address the question of what constitutes originality -- the issue in dispute here. To interpret originality, courts have relied on principles of constitutional law and construction because the authority for Congress to provide copyright protection is derived from the United States Constitution, Art. I, § 8, cl.8. While the standards for determining when the statutory requirement of originality is met are not, themselves, set forth in the statute, there are some well-settled judicial guidelines for determining whether a work satisfies this requirement.

Maps may be protected; as one commentator stated: "It is no doubt true that most of the early cases dealing with map copyright referred to the requirement of original effort in exploring, surveying, making inquiries, and drafting the map solely on the basis of one own's investigations." Robert A. Gorman, <u>Copyright Protection for the Collection and Representation of Facts</u>, 76 Harv. L. Rev. 1569, 1572 (1963). More recently, the Supreme Court has clarified that merely expending time preparing materials based on facts or information already in the public domain is in itself not enough to support a copyright. <u>See</u> <u>Feist Pub., Inc. v. Rural Tel. Serv. Co</u>., 499 U.S. 340 (1991).

In examining maps that are based on pre-existing census maps, the Copyright Office must, after <u>Feist</u>, look for some minimal creativity in the expression contained in the maps. <u>See</u> 37 C.F.R. § 202.10(a) (a graphic or pictorial work must exhibit some creativity in its delineation or form).

        1. <u>Copyright Office Practices Incorporate Feist Principles for Originality</u>

<u>Feist</u> is a landmark case on the meaning of originality, particularly for compilations of public domain elements. Consistent with <u>Feist</u> and other judicial precedents, Copyright Office regulations and practices interpret originality to consist of two components. A work must be original to the author and must have a minimal level of creativity. <u>See</u> <u>Feist</u>, 499 U.S. at 345.

Plaintiff naturally emphasizes that _Feist_ requires a very low level of creativity to satisfy the originality requirement. <u>See</u> Pl. Mem. at 7-8. While that is indisputable, the basis of the Court's decision was that there are works in which the "creative spark is utterly lacking or so trivial as to be virtually nonexistent." 499 U.S. at 359. Plaintiff ignores this latter principle.

In _Feist_, the Court ruled that white pages listing telephone numbers in alphabetical order by name of resident did not meet the minimum standards for copyright protection. <u>See</u> 499 U.S. at 363. It characterized the arrangement as "typical," "an age-old practice, firmly rooted in tradition and so commonplace that it has come to be expected as a manner of course." <u>Id.</u> Such works are incapable of sustaining copyright protection. <u>See</u> <u>id</u>. at 359 (citing <u>Nimmer on Copyright</u>, 2.01[B]). The Court observed that "[a]s a constitutional matter, copyright protects only those constituent elements of a work that possess more than a _de minimis_ quantum of creativity." <u>Id.</u> at 363. A work that reflects an obvious arrangement fails to meet the low standard of minimum creativity required for copyrightability. <u>See</u> <u>id</u>. at 362-363. The Supreme Court characterized the work at issue in _Feist_, the alphabetical listing of resident's numbers in a telephone directory, as "garden variety . . . devoid of even the slightest trace of creativity." <u>Id</u>. at 362.

Written guidelines for Copyright Office examiners who routinely review applications for registration incorporate the principles for originality elucidated by the Supreme Court in _Feist_. Even prior to _Feist_, based on earlier case law, those practices required works to have more than a _de minimis_ amount of authorship. _See Compendium II, Compendium of Copyright Office Practices_ (1984), Chapter 100 (detailed guidelines for examination procedures).[1] With respect to pictorial, graphic and sculptural works, _Compendium II_ states that this requirement is not met by the combination of a few standard symbols or mere coloration. _See Compendium II_, § 503.02(a) at 500-3 (1984); _see also_ Def.'s Mem. in Supp. of Mot. for Summ. J. at 14.

   2.   Copyright Office Practices Incorporate the Feist Standard for Compilations

Copyright Office regulations clarify what subject matter is not copyrightable as a matter of public policy, including "[w]ords and short phrases such as names, titles, and slogans; familiar symbols or designs; mere variations of typographic ornamentation, lettering or coloring; mere listing of ingredients or contents." _See_ 37 C.F.R. § 202.1(a). Moreover, facts are not subject to copyright protection. These exceptions to copyright protection are the basic building blocks for creative works that must remain in the public domain, available to all. Permitting them to be

_____

[1] Copies of the cited pages of _Compendium II_ are attached hereto.

6

copyrighted would impede the constitutional goals that underlie Congress's authority to establish copyright protection. <u>See</u> Art. I, § 8, cl. 8. "The primary objective of copyright is not to reward the labor of authors, but '[t]o promote the Progress of Science and useful Arts.'" <u>Feist</u>, 499 U.S. at 349.

<u>Feist</u> is particularly instructive in its elucidation of the appropriate analysis for determining whether compilations of public domain elements satisfy the requirement for creative authorship. Works based on public domain elements may be copyrightable as compilations if there is some distinguishable element in their selection, coordination and arrangement that reflects choice and authorship that is not so obvious or so minor that the "creative spark is utterly lacking or so trivial as to be nonexistent." <u>Id.</u> at 358-359; <u>see</u> <u>also</u> 17 U.S.C. § 101 (definitions of "compilation" and "derivative work").

For this compilation analysis, the Copyright Office considers the organization, arrangement or selection of works as a whole. <u>See</u> <u>Compendium II</u>, § 625.02 at 600-141 (1988). As discussed below, the Copyright Office applied the <u>Feist</u> standard for compilations here.

C.  <u>Employing the Same Standards for Maps as Applied by Courts, the Copyright Office Was Reasonable in Refusing Registration</u>

The Copyright Office standard for determining whether there is sufficient creativity, more than *de minimis*, in a map to support a

copyright registration is the same as for all other works and the same as that applied by courts. Three examples of courts applying this standard to maps, cited by plaintiff, are <u>Albert Sparaco v. Lawler, Matusky, Skelly Engineers LLP</u>, 303 F.3d 460 (2d Cir. 2002), <u>Hodge Mason Maps, Inc. v. Montgomery Data, Inc.</u>, 967 F.2d 135 (5th Cir. 1992) and <u>Streetwise Maps, Inc. v. Vandam, Inc.</u>, 159 F.3d 739 (2d Cir. 1998).

In <u>Albert Sparaco</u>, an infringement suit involving a copyrighted site plan, the court emphasized that protection is not available for work expended to discover facts included in a map, often referred to as "sweat of the brow." It further noted:

> [C]onsiderable skill and originality can be exercised by a mapmaker in the setting forth of unprotected information--in the selection or elimination of detail, the size, shape, and density of informative legends, the establishment of conventions relating to color or design to represent topographical or other features, and many other details of presentation.

303 F.3d at 467 (citations omitted).

Plaintiff's work, Maps for AppraisersDOTcom (hereafter, "Maps") does not contain evidence of more than a *de minimis* amount of creativity. The few elements present in Maps are basic designs, added to preexisting census maps[2], and call-outs, that are commonplace. So are the selection, coordination and arrangement. <u>United States v Hamilton</u>, 583 F2d 448 , 451 (9th Cir. 1978)

---

[2] Plaintiff admits that his maps employ preexisting census maps. (AR 33-34).

(citations omitted) (". . .it is well-settled that copyright of a map does not give the author an exclusive right to the coloring, lettering, symbols and key used in delineating boundaries of and locations within the territory depicted."). Plaintiff has made no selection, but has depicted all of the states and all of the counties. Moreover, Plaintiff has presented them in their usual placement on maps and when listed, they appear alphabetically. Plaintiff states that his maps only "labeled, numbered or called out certain counties on the state maps." Pl. Mem. at 11. He argues that the identification of some states or counties through callouts, using numbers or names, is evidence of sufficient creativity for compilation authorship. See id; (AR 22-23).

Defendant does not dispute that Plaintiff spent many hours preparing Maps. However, the labeling or numbering to call out certain geographical locations lacks sufficient creativity for copyright registration. As to selection, Plaintiff included all states in the United States and all counties in each state, which is an obvious, mechanical choice. By including all, he did not make any distinctions among them.

Also, it is apparent from a visual inspection of the deposit submitted for Maps that the states and counties that are called out are too small to otherwise identify. The areas selected for identification simply do not have enough space for their names to be physically placed on top of them, as is done with the rest of

the states and counties. This is a mechanical choice dictated by the physical limitations of certain states and counties relative to the rest, not by the author's creative judgment.

When the Office considered the labeling, numbering or call outs in the work as a whole, it found that the elements used to identify geographical locations in Maps were typical, common choices that are standard in mapmaking. In its written refusal to register Plaintiff's Maps, the Office described the placement and arrangement of these elements as format and layout which are not subject to copyright protection. (AR 29).

In <u>Hodge Mason Maps</u>, the court held that Mason's maps possessed sufficient creativity in both the selection, coordination and arrangement of facts and in the pictorial and graphic works. Mason obtained information about land surveys, land grants, tracts and various topographical features from a variety of sources that he selected. He exercised extensive selection and judgment in order to position the counties and locations of property lines which had been interpreted differently by other mapmakers who relied on different sources. <u>See</u> 967 F.2d at 139-41 & n.10. Here, Plaintiff's maps lack the modicum of creativity required to transform mere selection into copyrightable expression. <u>See</u> <u>id.</u> at 141 (citing <u>Feist</u>, 499 U.S. at 363-64). As discussed, Plaintiff's selection of all states and all counties means that there was no

selection and its selection of counties to be called out is based on spacing choices that are no more than commonplace and typical.

In <u>Streetwise Maps, Inc. v. Vandam, Inc</u>., an infringement suit, the court compared the parties' maps by focusing on the overall manner in which Streetwise selected, coordinated arranged the expressive elements, including color, to convey the information. The court determined that Streetwise's maps possessed sufficient creativity in the selection, coordination and arrangement of the facts depicted and also their pictorial and graphic elements, although it also held there was no infringement of those protected elements. 159 F.3d at 748. Similarly, here the Copyright Office examined Plaintiff's works as a whole and determined that the elements of these works, which incorporated preexisting materials, had not been "selected, coordinated, or arranged *in such a way* that the resulting work as a whole constitutes an original work of authorship." (AR 8, citing <u>Feist</u>, 499 U.S. at 356).

In the above cases, the courts analyzed the overall manner in which expressive elements were used to convey information, through selection, coordination and arrangement, as well as, through the pictorial and graphic elements that were used. By contrast, Plaintiff's maps fall far short. The additions that he claims are copyrightable amount to little more than layout and format of preexisting political boundaries, a few city name placements and

some *de minimis* graphical authorship. See Compendium II at § 202.02(j). Even the addition of the labeling and call-outs, essentially name placements, lack the creative and original authorship necessary to support a copyightable compilation. See Hamilton, 583 F.2d at 452 n.5 (citations omitted)(noting that "copying the outline of the United States and the boundaries of each state," or the "selection of principal cites" will not support a copyright). Nor is the format and layout of text on the map susceptible to copyright protection. See Perris v. Hexamer, 99 U.S. 674, 676 (1878) (disavowing copyright protection for " the form of the characters they employ to express their ideas upon the face of the map . . . and the form of type they select to print . . . .") The fact that Plaintiff chose the color blue for the maps' background and white color for the names and chose the size of the font used on names of states and counties may represent "sweat of the brow," but it is too trivial to support a copyright.

Plaintiff relies on Streetwise Maps to argue that the color in his maps is copyrightable. See Pl. Mem. at 8. As discussed *supra*, in Streetwise, the court considered color in comparing the overall look of the parties' works, as part of the infringement analysis. While the copyrightability analysis may also consider the use of color in so far as it creates images, a copyright claim cannot be based solely on the use or selection of color. See Compendium II, Chapter 500, § 506.03. Moreover, the maps in Streetwise had a

12

color scheme involving several colors to illustrate various features. See 159 F.3d at 748. Plaintiff's maps, on the other hand, are largely monochrome, specifically, blue. The Office found Plaintiff's use of color to indicate the borders of states and counties to be entirely typical, even when considering the work as a whole. Its conclusion was reasonable based upon the works presented.

D. Plaintiff's Claim that the Copyright Office Should Have Produced Prior Designs for Comparison Is Ill-Founded

Plaintiff argues that the Copyright Office did not produce evidence that the maps and designs in his works lacked the requisite creativity, stating that the Office "did not provide any illustrations or evidence to demonstrate why it determined that Mr. Darden's stylized maps were 'entirely typical.'" Pl. Mem. at 3, 6 and 12. The Copyright Office does not make findings of fact, although it reserves the right to request explanations of statements made by applicants, in appropriate cases. See Compendium II, Chapter 100, § 108.05. The Office's review of a claim for registration is confined to the information provided in an application and making a determination of whether that claim is sufficient. However, the Office does take administrative notice of matters of general knowledge. See id. at § 108.05(b). Therefore, the burden is on applicants to provide evidence that works satisfy the minimum requirement for creativity.

Furthermore, the examination for copyrightability does not include a comparison to other works, unlike the other fields of intellectual property, patents and trademarks. Originality in copyright law is not judged by a comparison to prior works. <u>See Compendium II</u> at § 108.03. Therefore, the Copyright Office is prohibited from considering evidence based on comparisons with other works. As stated, however, the Copyright Office takes administrative notice of matters of general knowledge. Each individual claim or work is considered on a case by case basis, without regard to any other specific work.

E.  <u>Copyright Office Did Not Base Its Refusal on an Evaluation of the Merit of Plaintiff's Works</u>

Relying on <u>Rockford Map Publishers, Inc. v. Directory Service Co. of Colorado, Inc.</u>, 768 F.2d 145, 148 (7th Cir. 1985), Plaintiff implies that the Copyright Office has wrongly refused to register his works because it did a subjective assessment of the value or importance of his works. On the contrary, Copyright Office examination procedures do not evaluate the aesthetic or commercial merits of works as part of its originality analysis. Compendium II instructs examiners that the aesthetic, commercial or symbolic merit of a work is not relevant to an examination for originality. <u>See Compendium II</u> at § 503.01. A work may be highly valued for those things and, yet, not be copyrightable and *vice versa*. This legal interpretation is consistent with <u>Bleistein v. Donaldson Lithographing Company</u>, 188 U.S. 239 (1903); <u>see also</u>, <u>Paul</u>

14

Morelli Design v. Tiffany & Co., 200 F. Supp.2d 482, 488-489 (E.D. Pa. 2002); Homer Laughlin China Co. v. Oman, 1991 WL 154540, 22 U.S.P.Q.2d 1074, 1076 (D.D.C. 1991).

In sum, the Copyright Office analyzed plaintiff's works using the same legal standards employed by courts, and arrived at a reasonable conclusion. Plaintiff admits that the maps that form the basis for his claim to copyright in both works were taken from pre-existing Census maps. The Copyright Office's judgment that the additions made by plaintiff fail to show more than a de minimus amount of creativity is consistent with case law and the Copyright Office's long standing interpretations of the statute. Thus, the Copyright Office did not abuse its discretion in refusing to register plaintiff's works.

CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment should be granted and Plaintiff's motion for summary judgment should be denied.

Respectfully submitted this _18th_ day of March, 2005.

FRANK D. WHITNEY
United States Attorney

BY: _____

(for) LORA M. TAYLOR
Assistant United States Attorney
Civil Division
310 New Bern Avenue
Suite 800, Federal Building
Raleigh, NC 27601-1461
Telephone: (919) 856-4907
FAX:       (919) 856-4821

OF COUNSEL:                     PETER D. KEISLER
DAVID O. CARSON                 Assistant Attorney General
General Counsel
U.S. Copyright Office
MARILYN J. KRETSINGER           _____
Associate General Counsel       JOHN FARGO
RENEE COE                       Director
Senior Attorney                 Commercial Litigation Branch
U.S. Copyright Office           Civil Division
Attorneys for Defendant         Department of Justice
                                Washington, DC  20530

16

## CERTIFICATE OF SERVICE

I do hereby certify that I have this 18th day of March, 2005, served a copy of the foregoing upon the below listed party by placing a copy of the same in the U.S. Mails, addressed as follows:

ANTHONY J. BILLER
DAVID E. BENNETT
COATS & BENNETT, PLLC
1400 Crescent Green, Suite 300
Cary, NC 27511
Telephone: (919) 854-1844
Facsimile: (919) 854-2084

Assistant United States Attorney
Civil Division

Excerpts From


COMPENDIUM II

COMPENDIUM OF COPYRIGHT OFFICE PRACTICES

*Mark Lillis*
*Feb. 13, 1985*

COMPENDIUM II

COMPENDIUM

OF

COPYRIGHT OFFICE PRACTICES

Under the Copyright Law Which
Became Fully Effective on
January 1, 1978, Including
Title 17 of the United States
Code and Amendments Thereto

COPYRIGHT OFFICE
THE LIBRARY OF CONGRESS
WASHINGTON, D. C.   20559

1984

# PREFACE

This Compendium (designated as Compendium II) reflects Copyright Office practices under the copyright law which became fully effective on January 1, 1978, including Title 17 of the United States Code and amendments thereof.

An earlier Compendium (now called Compendium I) was issued a number of years ago to reflect Copyright Office practices under the Copyright Act of 1909, as amended. Compendium I applies to Copyright Office actions, in situations which it covers, where the provisions of the Copyright Act of 1909, as amended, are dispositive.

The Compendium is a manual intended primarily for the use of the staff of the Copyright Office as a general guide to its examining and related practices. It is not a book of rules that is meant to provide a ready-made answer to all questions that arise. Any new case presented to the Office may require special analysis.

The practices of the Copyright Office are subject to constant review and modification in the light of new experience and continuing reappraisal. Accordingly, additions, deletions, and other amendments will be made from time to time. The Copyright Office will provide an up-to-date copy of the Compendium for public inspection and copying. The Office will likewise maintain a separate record of all material withdrawn from the Compendium as superseded.

Section 201.1(b)(3) of the Copyright Office Regulations, Title 37 of the Code of Federal Regulations, which are authorized under section 702 of the current copyright law, provides for a compendium of Office practices.

Copies of Compendium II are available for purchase from the Superintendent of Documents, United States Government Printing Office, as a looseleaf publication; amendments and supplements will be published by the Superintendent of Documents in the form of additional or replacement pages as such changes are made.

Copies of the earlier Compendium (Compendium I) may be purchased from the National Technical Information Service, United States Department of Commerce.

-oOo-

[1984]

# TABLE OF CONTENTS

| Number | Title |
|--------|-------|
| 100 | BASIC POLICIES |
| 200 | COPYRIGHTABLE MATTER:  IN GENERAL |
| 300 | COPYRIGHTABLE MATTER:  NONDRAMATIC LITERARY WORKS |
| 400 | COPYRIGHTABLE MATTER:  WORKS OF THE PERFORMING ARTS AND SOUND RECORDINGS |
| 500 | COPYRIGHTABLE MATTER:  PICTORIAL, GRAPHIC AND SCULPTURAL WORKS |
| 600 | REGISTRATION PROCEDURES |
| 700 | APPLICATIONS AND FEES |
| 800 | DEPOSIT FOR REGISTRATION |
| 900 | PUBLICATION |
| 1000 | NOTICE OF COPYRIGHT |
| 1100 | ELIGIBILITY |
| 1200 | MANUFACTURING PROVISIONS |
| 1300 | RENEWAL OF COPYRIGHT |
| 1400 | GROUP REGISTRATIONS [IN PREPARATION] |
| 1500 | CORRECTIONS AND AMPLIFICATIONS OF COPYRIGHT OFFICE RECORDS; SUPPLEMENTARY REGISTRATIONS |
| 1600 | RECORDATION OF TRANSFERS AND OTHER DOCUMENTS PERTAINING TO A COPYRIGHT |
| 1900 | RECORDS, INDEXES, AND DEPOSITS OF THE COPYRIGHT OFFICE; INSPECTION, COPYING, ADDITIONAL CERTIFICATES, AND OTHER CERTIFICATIONS |
| ---- | INDEX TO COMPENDIUM II |

[1988]

Chapter 100

BASIC POLICIES

Outline of Topics

101        Basic policies.

102        The constitutional provision.

103        The copyright law.

104        The Copyright Office.

105        Statutory authority for examination.

106        Copyright Office Regulations.

107        The establishment, maintenance, and availability
           of a public record.

108        The examination process.

    108.01        Nature of examination.
    108.02        Scope of examination.
    108.03        Comparison of works.
    108.04        Extent of copyright claims.
    108.05        Factual determinations.
    108.06        Adverse claims.
    108.07        Rule of doubt.
    108.08        Cautionary or warning letters.
    108.09        Refusal to register.
    108.10        Obscene or pornographic works.
    108.11        Works containing classified information.

109        Communications between the applicant and the
           Copyright Office.

    109.01        In general.
    109.02        Copyright Office communications.
    109.03        Opinions and advice.
    109.04        One letter concerning more than one application.
    109.05        Communications from applicants.
    109.06        Languages.

- 1 -

[1984]

110          Applicants.

    110.01          Minors.
    110.02          Mental incompetents.
    110.03          Prisoners.
    110.04          Paupers.
    110.05          Agents.
    110.06          Attorneys.
    110.07          False representation.

111          Territorial limitations.

112          Recordations and Import Statements.

[1984]

## BASIC POLICIES

101     Basic policies.  Set forth below are the policies
        upon which the examining and related practices of
        the Copyright Office are based.

102     The constitutional provision.  The Constitution
        of the United States provides, in Article 1,
        Section 8, that the "Congress shall have Power
        . . . To promote the Progress of Science and
        useful Arts, by securing for limited Times to
        Authors and Inventors the exclusive Right to
        their respective Writings and Discoveries."

103     The copyright law.  The U.S. copyright law is
        based upon the above provision of the Consti-
        tution, especially as it relates to the
        "Writings" of "Authors."  The current copyright
        law is the Copyright Act which became fully
        effective on January 1, 1978, including Title
        17 of the United States Code, and amendments
        thereof.  The previous law was the Copyright
        Act of 1909, as amended.

104     The Copyright Office.  The copyright law provides
        that all administrative functions and duties which
        it imposes are, except as otherwise specified, the
        responsibility of the Register of Copyrights as
        director of the Copyright Office of the Library of
        Congress and that the Register, together with sub-
        ordinate officers and employees of the Office,
        shall be appointed by the Librarian of Congress and
        shall act under the Librarian's general direction
        and supervision.  See 17 U.S.C. 701(a).  The Copy-
        right Office is a department of the Library of
        Congress, and the Register of Copyrights is also
        Assistant Librarian of Congress for Copyright
        Services.  In addition to its principal function,
        which is the performance of all duties relating to
        the registration of copyrights, the policies and
        practices of the Copyright Office are also designed
        to promote the overall objectives of the Library of
        Congress.  See the Library of Congress Regulations,
        LCR 215.

105        Statutory authority for examination.  Section
410(a) of the current law specifies that when,
"after examination, the Register determines that
. . . the material deposited constitutes copyright-
able subject matter and that the other legal and
formal requirements . . . have been met, the
Register shall register the claim and issue to the
applicant a certificate of registration under the
seal of the Copyright Office."  Section 410(b)
provides that in "any case in which the Register
of Copyrights determines that . . . the material
deposited does not constitute copyrightable subject
matter or that the claim is invalid for any other
reason, the Register shall refuse registration and
shall notify the applicant in writing of the
reasons for such refusal."  Section 205(a) states
that any "transfer of copyright ownership or other
document pertaining to a copyright may be recorded
in the Copyright Office."  These provisions,
together with other pertinent sections of the law,
constitute the statutory basis for the examining
and related practices of the Copyright Office.

106        Copyright Office Regulations.  The Register of
Copyrights is authorized by section 702 of the
copyright law to establish, subject to the approval
of the Librarian of Congress, regulations not
inconsistent with law for the administration of
the functions and duties made the responsibility of
of the Register.  The Copyright Office Regulations,
including those relating to examination, registra-
tion, and recordation, are embodied in Title 37 of
the Code of Federal Regulations.

107        The establishment, maintenance, and availability of
a public record.  The foregoing constitute the
basis for the establishment and maintenance by the
Copyright Office of a reliable and useful public
record which includes all registrations of copy-
right claims and recordations of documents
pertaining to copyrights.  This record is made
available to the public by the Copyright Office
through (1) the issuance of certificates of copy-
right registration which attest that registration

107      **The establishment, maintenance, and availability of a public record.** (cont'd)

has been made and which may constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate, (2) the publication of the Catalogs of Copyright Entries, which provide the basic facts of registration for all registered works, (3) the issuance of certificates certifying that transfers of copyright ownership or other documents pertaining to copyrights have been recorded, (4) the issuance of certified copies of applications, deposit copies, documents, and various other materials submitted to the Copyright Office in connection with registrations and recordations, (5) the maintenance in the Copyright Office of the Copyright Card Catalog, for public use in searching for completed registrations and recorded documents, and (6) the providing of a Copyright Office reference service to furnish, by means of written search reports, the facts of registration and recordation contained in the files of the Office. This system depends, for its reliability and usefulness, primarily upon the examination process.

108      **The examination process.** The examination process, which is the principal means of creating and maintaining a reliable and useful public record, includes the examination of (1) the copies or phonorecords of works submitted for registration, (2) the application for registration, (3) all other material and correspondence submitted with the claim, and (4) copies of any Copyright Office correspondence relating to the registration of the claim.

108.01      **Nature of examination.** Examination is made to determine (1) whether or not the work for which registration is sought constitutes copyrightable subject matter and (2) whether or not the other legal and formal requirements have been met, including those set forth in the Copyright Office Regulations and in the Compendium of Copyright Office Practices.

[1984]

108        The examination process.  (cont'd)

108.02        Scope of examination.  The Copyright Office
               registers claims to copyright whenever the
               requirements of the law appear to be met.
               It does not grant copyrights.

108.03        Comparison of works.  The Copyright Office does
               not generally make comparisons of copyright
               deposits to determine whether or not particular
               material has already been registered.

108.04        Extent of copyright claims.  In general the
               registration of a claim to copyright is con-
               sidered to extend to all the component parts of
               the work which are the subject matter of copy-
               right and in which the applicant has the right
               to claim on the basis of the particular appli-
               cation under consideration.  Where part of the
               work was previously published or was covered by
               a previous registration, the copyright claim as
               reflected in the application should generally
               be limited to the new material covered by the
               claim being registered.  Also, where a work
               contains material which is unpublished and
               unregistered, and where the claim does not
               extend to such material, the application
               should reflect this limitation in the scope
               of the registration.  Moreover, the coverage
               of a registration cannot, subject to certain
               exceptions, extend beyond the material
               deposited to make that registration.

108.05        Factual determinations.  In connection with
               its examining and related activities, the
               Copyright Office does not ordinarily make
               findings of fact with respect to publication
               or any other thing done outside the Copyright
               Office.

108.05(a)        Requests for explanation.  The Copyright
                  Office reserves the right to request, in
                  appropriate cases, explanations of state-
                  ments made by an applicant.

[1984]

108        The examination process.  (cont'd)

108.05        Factual determinations.  (cont'd)

108.05(b)        Administrative notice.  The Copyright
Office may take notice of matters of
general knowledge.  It may use such knowl-
edge as the basis for questioning applica-
tions that appear to contain or be based
upon inaccurate or erroneous information.

108.06        Adverse claims.  The sequence of receipt in
the Copyright Office of separate claims by two
or more applicants plays no part in determining
registrability.  Where the Copyright Office is
aware that two or more persons or organizations
are adversely claiming copyright in, and are
seeking separate registrations for, the same
material, the Office may inform each applicant
of the existence of the other claim(s) and
inquire concerning the basis of each claim.
All such claims will be registered if they are
reasserted and if they are in order as con-
firmed by the response to the Copyright Office
inquiry.  The Copyright Office does not conduct
"opposition" or "interference" proceedings such
as those provided by the Federal trademark and
patent laws.

108.07        The rule of doubt.  The Copyright Office will
register the claim even though there is a
reasonable doubt about the ultimate action
which might be taken under the same circum-
stances by an appropriate court with respect
to whether (1) the material deposited for
registration constitutes copyrightable subject
matter or (2) the other legal and formal
requirements of the statute have been met.

108.08        Cautionary or warning letters.  When regis-
tration is made under the rule of doubt, the
Copyright Office will ordinarily send a letter
to the applicant cautioning that the claim may
not be valid and stating the reason; and such
letter may warn, where appropriate, that the

108        **The examination process.** (cont'd)

   108.08      **Cautionary or warning letters.** (cont'd)

problem may exist for future works and point out how it can be avoided. The Office may send the letter and withhold the application until specifically authorized by the applicant to make registration, or it may make registration before sending the letter.

   108.09      **Refusal to register.** The Copyright Office will not register a claim where (1) the material deposited does not constitute copyrightable subject matter or (2) the claim is invalid for any other reason. See also section 108.07 above concerning the rule of doubt. The Office will notify the applicant in writing of the reasons for such refusal.

   108.10      **Obscene or pornographic works.** The Copyright Office will not ordinarily attempt to examine a work to determine whether it contains material that might be considered obscene or pornographic.

   108.11      **Works containing classified information.** When, in examining or processing materials received in the Copyright Office, it is noted that such material contains, or reasonably appears to contain, information classified by the U.S. Government for such reasons as national defense or national security, (1) the appropriate security official of the Library of Congress should be immediately notified through supervisory channels, (2) the material should be held or disposed of in accordance with instructions from that official, and (3) the examination or other processing of the material by the Copyright Office should be suspended until the matter is resolved.

109        **Communications between the applicant and the Copyright Office.** Communications between the Copyright Office and applicants may be by letter or other written means, by telephone, or by personal interview.

**109**        Communications between the applicant and the Copyright Office.  (cont'd)

109.01        In general.  As a general policy the Copyright Office may register claims without communicating with the applicant whenever possible.  The Copyright Office will communicate with the applicant before registration only when the claim as a whole is not in substantial compliance with the practices of the Copyright Office as reflected in this Compendium.

109.02        Copyright Office communications.  All Copyright Office communications should be clear in meaning, concise in statement, and polite in tone.

109.03        Opinions and advice.  Copyright Office communications that result from the examination of claims should be limited to questions concerning registration and related matters.  They should conform to the general policy of the Copyright Office by avoiding the expression of opinions or the offer of advice on such matters as the rights of persons in connection with contracts or alleged infringements.  Also, there should be no offer or undertaking to resolve disputes concerning conflicting claims to copyright or similar matters.  See section 108.06 above, concerning adverse claims.

109.04        One letter concerning more than one application.  When more than one application is submitted to the Copyright Office by an applicant in one package, the Office will ordinarily attempt  to deal in a single letter with all of those applications which require correspondence, rather than produce a separate letter for  each one.  Also, the Office may deal in one letter with materials received separately from a single applicant.

109.05        Communications from applicants.  The Copyright Office will generally consider all statements and materials submitted by applicants.  However, any abusive or scurrilous written materials

109    Communications between the applicant and the Copyright Office.  (cont'd)

109.05    Communications from applicants.  (cont'd)

directed to the Office or any of its employees will be returned unanswered; see 37 C.F.R. 201.2(c)(4).  Similarly, Copyright Office employees will terminate any conversation or interview, if an applicant makes abusive or scurrilous statements, or engages in threatening behavior.

109.06    Languages.  The Copyright Office will ordinarily write to applicants only in the English language and will ordinarily conduct conversations and interviews with applicants only in English.  As a general rule, the Office is willing to entertain applications and record documents that are in languages other than English, and to deal with correspondence from applicants which is in a language other than English.  In special cases, however, the Office may require the submission of an English translation of statements on applications, documents, or correspondence before it takes action.

110    Applicants.  The applicant for registration may be the author or other copyright claimant, or the owner of exclusive right(s) in the work.  Moreover, a duly authorized agent may apply for registration on behalf of such author, claimant, or owner.

110.01    Minors.  The author, claimant, or owner can be a minor, even though State law may regulate or control business dealings involving minors. The Copyright Office will generally accept an application submitted either by a minor or by the minor's parents or guardian, if it is otherwise in order.

110.02    Mental incompetents.  The author, claimant, or owner can be a mentally incompetent person. If a committee or guardian has been appointed for a person adjudged to be incompetent, such committee or guardian should generally serve as agent of the applicant.

[1984]

110          Applicants.  (cont'd)

110.03          Prisoners.  The author, claimant, or owner can
                be an inmate of a prison or other penal insti-
                tution.  The Copyright Office will generally
                accept an application submitted by such a
                person as applicant, if it is otherwise in
                order.

110.04          Paupers.  There is no provision of law which
                requires or permits the waiver or reduction of
                the registration fee or any other registration
                requirement of the copyright law on the grounds
                that the applicant is a pauper or is otherwise
                impecunious.

110.05          Agents.  Any duly authorized agent may act on
                behalf of the applicant.  The Copyright Office
                will generally accept the statement of a person
                that he or she is acting as the agent of the
                author, claimant, or owner.  However, the
                Office may, in special cases, request such
                agent to submit documentation showing that he
                or she is empowered to act for the author,
                claimant, or owner.  Where such author,
                claimant, or owner is other than a natural
                person (for example, where a corporate entity
                is the claimant), the application must be sub-
                mitted by a natural person acting as agent.
                The name of a corporate entity or other organi-
                zation is not acceptable as the signature of
                the applicant or agent unless it is accompanied
                by the signature of a natural person authorized
                to sign on behalf of such entity or organiza-
                tion.

110.06          Attorneys.  The Copyright Office does not
                require that the author, claimant, or owner
                be represented by an attorney, although the
                Office may suggest in special cases that the
                applicant consider seeking the advice of an
                attorney.  No special qualifications or test
                is imposed on lawyers as a condition to dealing
                with the Copyright Office.

[1984]

110          Applicants.  (cont'd)

110.07          False representation.  The copyright law pro-
                vides that any person who knowingly makes a
                false representation of a material fact in an
                application for registration, or in any written
                statement filed in connection with an appli-
                cation, shall be guilty of a criminal offense
                and shall be fined not more than $2,500.  See
                17 U.S.C. 506(e).

111          Territorial limitations.  The U.S. copyright law
             has no extraterritorial effect in that generally
             its provisions with respect to infringement extend
             only to violations occurring in the United States.
             Since the practices of the Copyright Office spring
             solely from the U.S. law, ordinarily the Compendium
             of Copyright Office Practices deals only with U.S.
             copyright, unless it expressly states otherwise.

112          Recordations and Import Statements.  The basic
             policies set forth above also apply, with some few
             alterations and exceptions, to the recordation of
             transfers of copyright ownership and other docu-
             ments pertaining to copyrights, and to requests for
             the issuance of Import Statements.  See Chapter
             1200: MANUFACTURING PROVISIONS, and Chapter 1500:
             CORRECTIONS AND AMPLIFICATIONS OF COPYRIGHT OFFICE
             RECORDS; SUPPLEMENTARY REGISTRATIONS.


                    [END OF CHAPTER 100]


[1984]

# Chapter 500

## COPYRIGHTABLE MATTER:
## PICTORIAL, GRAPHIC, AND SCULPTURAL WORKS

### Outline of Topics

501          Pictorial, graphic, and sculptural works: in
             general.

  501.01        Forms of embodiment.

502          Works of art.

503          Registration requirements for drawings, paintings,
             other pictorial works, and sculpture.

  503.01        Style and artistic merit.
  503.02        Copyrightable pictorial, graphic, and sculp-
                tural expression.
  503.03        Works not capable of supporting a copyright
                claim.

504          Registration requirements for two-dimensional
             useful articles, three-dimensional works of
             artistic craftsmanship, and models.

  504.01        Material not subject to registration.
  504.02        Examples.

505          Registration requirements for the shapes of three-
             dimensional useful articles.

  505.01        Definition of useful article.
  505.02        Separability test.
  505.03        Separability test: conceptual basis.
  505.04        Separability test: physical basis.
  505.05        Separability test: factors not relevant in
                determining registrability.

506          Prints.

  506.01        Registration requirements.
  506.02        Pictorial or graphic material.
  506.03        Uncopyrightable elements.

[1984]

507          Reproductions of pictorial, graphic, or sculp-
             tural works.

    507.01        Registration requirements.
    507.02        Derivative works.
    507.03        Reproductions not capable of supporting a
                  registration.

508          Photographs, holograms, and individual slides.

    508.01        Registration requirements.
    508.02        Uncopyrightable works.

509          Maps.

    509.01        Registration requirements.
    509.02        Compilations and derivative works.
    509.03        Elements not capable of supporting a copyright.

510          Scientific works: architectural and technical
             drawings and models.

    510.01        Registration requirements.
    510.02        Uncopyrightable works.
    510.03        Ideas, processes, or systems.
    510.04        Subjects depicted.

Chapter 500

COPYRIGHTABLE MATTER:
PICTORIAL, GRAPHIC, AND SCULPTURAL WORKS

501    **Pictorial, graphic, and sculptural works: in general.**  The copyright law defines "pictorial, graphic, and sculptural works" as including two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, technical drawings, diagrams, and models.  Such works shall include works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned; the design of a useful article, as defined in this section, shall be considered a pictorial, graphic, or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.  See 17 U.S.C. 101.

501.01    **Forms of embodiment.**  Registrable pictorial, graphic, or sculptural authorship may be embodied in a wide variety of forms.  These include works of fine, graphic, and applied art; prints; photographs, holograms, and individual slides; art reproductions; maps, globes, and charts; architectural and technical drawings; diagrams, patterns, models, and the like; and advertisements. Motion pictures, film strips, slide presentations, and other audiovisual works are not "pictorial works" for the purpose of registration.

502    **Works of art.**  These include works of the fine arts, such as paintings, other pictorial works, and sculpture, as well as works of artistic craftsmanship, such as jewelry, glassware, ceramic figurines, table service patterns, wall plaques, grave markers, toys, dolls, stuffed toy animals, models, and the separable artistic features of two-dimensional and three-dimensional useful articles.

500-1

503    **Registration requirements for drawings, paintings, other pictorial works, and sculpture.** Generally, in order to be entitled to registration, such works must contain original pictorial, graphic, or sculptural authorship. If the work consists entirely of uncopyrightable elements, registration is not authorized. On the other hand, the mere presence of uncopyrightable elements in a work will not prevent registration on the basis of features that are copyrightable under the statute. Thus a design, otherwise original, may be registrable even though it incorporates uncopyrightable standard forms, such as circles and squares.

503.01    **Style and artistic merit.** The registrability of a work of the traditional fine arts is not affected by the style of the work or the form utilized by the artist. Thus, the form of the work can be representational or abstract, naturalistic or stylized. Likewise, the registrability of a work does not depend upon artistic merit or aesthetic value. For example, a child's drawing may exhibit a very low level of artistic merit and yet be entitled to registration as a pictorial work.

503.02    **Copyrightable pictorial, graphic, and sculptural expression.** A claim to copyright in a work of the traditional fine arts will be registrable if the work contains at least a certain minimum amount of pictorial, graphic, or sculptural expression owing its origin to the author. If the expression is pictorial, the authorship could be expressed, for example, in the linear contours of a drawing, the assemblage of diverse fragments forming a collage, or the arrangement and juxtaposition of pieces of colored stone in a mosaic portrait. If the expression is sculptural, the authorship could, for example, be expressed by means of carving, cutting, molding, casting, shaping, or otherwise processing the material into a three-dimensional work of sculpture.

[1984]

503         **Registration requirements for drawings, paint-**
            **ings, other pictorial works, and sculpture.**
            (cont'd)

    503.02        **Copyrightable pictorial, graphic, and sculp-**
                  **tural expression.** (cont'd)

    503.02(a)         **Minimal standards: pictorial or graphic**
                      **material.** A certain minimal amount of
                      original creative authorship is essen-
                      tial for registration in Class VA or
                      in any other class. Copyrightability
                      depends upon the presence of creative
                      expression in a work, and not upon
                      aesthetic merit, commercial appeal, or
                      symbolic value. Thus, registration
                      cannot be based upon the simplicity of
                      standard ornamentation such as chevron
                      stripes, the attractiveness of a con-
                      ventional fleur-de-lys design, or the
                      religious significance of a plain,
                      ordinary cross. Similarly, it is not
                      possible to copyright common geometric
                      figures or shapes such as the hexagon
                      or the ellipse, a standard symbol such
                      as an arrow or a five-pointed star.
                      Likewise, mere coloration cannot
                      support a copyright even though it may
                      enhance the aesthetic appeal or com-
                      mercial value of a work. For example,
                      it is not possible to copyright a new
                      version of a textile design merely
                      because the colors of red and blue
                      appearing in the design have been
                      replaced by green and yellow, respec-
                      tively. The same is true of a simple
                      combination of a few standard symbols
                      such as a circle, a star, and a tri-
                      angle, with minor linear or spatial
                      variations.

                      Examples:

                      1)  An unpublished design for textile
                          fabric is submitted for registra-
                          tion in Class VA. The design con-
                          sists of a standard unembellished

503        Registration requirements for drawings, paint-
           ings, other pictorial works, and sculpture.
           (cont'd)

    503.02     Copyrightable pictorial, graphic, and sculp-
               tural expression.  (cont'd)

    503.02(a)      Minimal standards: pictorial or graphic
                   material.  (cont'd)

               Examples:  (cont'd)

               1)  (cont'd)

                   character of Chinese calligraphy
                   painted upon horizontally striated
                   grass cloth.  Practice: Registra-
                   tion is not authorized in this
                   case.  Like typography, calligraphy
                   is not copyrightable as such, not-
                   withstanding the effect achieved by
                   calligraphic brush strokes across a
                   striated surface.

               2)  An applicant for registration has
                   developed a novelty item consisting
                   of transparently clear plastic
                   sheets bonded together around their
                   periphery, and having a small
                   amount of colored liquid petroleum
                   in the air space between the
                   laminated sheets.  Any slight
                   pressure upon the external surface
                   results in the formation of undula-
                   ting patterns and shapes, no two of
                   which are ever identical.  Practice:
                   Since the specific outlines and
                   contours of the patterns and shapes
                   formed by the liquid petroleum do
                   not owe their origin to a human
                   agent, it is not possible to claim
                   copyright in such patterns and
                   shapes.  The novelty of the idea
                   embodied in the work and the
                   effects achieved by the action of
                   the petroleum under pressure like-
                   wise do not warrant registration.

[1984]

503  **Registration requirements for drawings, paint-
ings, other pictorial works, and sculpture.**
(cont'd)

503.02  **Copyrightable pictorial, graphic, and sculp-
tural expression.** (cont'd)

503.02(b)  **Minimal standards: sculptural material.**
The requisite minimal amount of origi-
nal sculptural authorship necessary for
registration in Class VA does not
depend upon the aesthetic merit, com-
mercial appeal, or symbolic value of a
work. Copyrightability is based upon
the creative expression of the author,
that is, the manner or way in which the
material is formed or fashioned. Thus,
registration cannot be based upon
standard designs which lack original-
ity, such as common architecture
moldings, or the volute used to
decorate the capitals of Ionic and
Corinthian columns. Similarly, it is
not possible to copyright common
geometric figures or shapes in three-
dimensional form, such as the cone,
cube, or sphere. The mere fact that a
work of sculpture embodies uncopyright-
able elements, such as standard forms
of ornamentation or embellishment, will
not prevent registration. However,
the creative expression capable of
supporting copyright must consist of
something more than the mere bringing
together of two or three standard forms
or shapes with minor linear or spatial
variations. In no event can registra-
tion rest solely upon the fact that an
idea, method of operation, plan, or
system has been successfully communi-
cated in three-dimensional form. In
every case, it is the creative expres-
sion of the author which must be able
to stand alone as an independent work
apart from the general idea which
informs it.

[1984]

503        Registration requirements for drawings, paint-
           ings, other pictorial works, and sculpture.
           (cont'd)

    503.02     Copyrightable pictorial, graphic, and sculp-
               tural expression.   (cont'd)

    503.02(b)      Minimal standards: sculptural material.
                   (cont'd)

               Examples:

               1)  Registration in Class VA is re-
                   quested for a design or model of a
                   table lamp.  Cast in plaster of
                   Paris, the design features the head
                   of a horse mounted on an iron
                   horseshoe with toe and heel calks
                   which supports the entire fixture.
                   Electrical wiring is concealed
                   within the plaster casting.
                   Practice:  If the head of the horse
                   is original, registration may be
                   considered on that basis.  However,
                   the general idea of embellishing a
                   lighting fixture with a work of art
                   is not copyrightable.  The same is
                   true of the decorative idea of
                   using a horseshoe as support for a
                   lamp base, regardless of the
                   pleasing effect thereby achieved.

               2)  A toy manufacturer conceives a
                   novel idea for a toy consisting of
                   multicolored geometrical spheres,
                   cubes, and cylinders of varying
                   sizes.  All of these parts or
                   pieces are magnetized, and will
                   adhere to one another when placed
                   in close proximity.  Thus, it is
                   possible to construct an indefinite
                   variety of shapes and figures by
                   means of the magnetized parts or
                   pieces.  The manufacturer desires
                   to protect the three-dimensional
                   aspects of the toy before publica-
                   tion occurs.  He applies to the

503        Registration requirements for drawings, paint-
           ings, other pictorial works, and sculpture.
           (cont'd)

    503.02        Copyrightable pictorial, graphic, and sculp-
                  tural expression.   (cont'd)

    503.02(b)        Minimal standards: sculptural material.
                     (cont'd)

                  Examples:  (cont'd)

                  2)  (cont'd)

                          Copyright Office for registration
                          of a design for an unpublished
                          sculptural work of art.  His appli-
                          cation Form VA is accompanied by
                          one complete set of magnetized
                          spheres, cubes, and cylinders
                          arranged in a plain box according
                          to size and color.  Practice:  We
                          will refuse a registration in Class
                          VA based solely upon the unassem-
                          bled toy, even though its component
                          parts or pieces are potentially
                          capable of being arranged in copy-
                          rightable shapes and forms.  The
                          general idea of the toy is uncopy-
                          rightable, regardless of its novelty
                          or uniqueness.

                  3)  A work described as a "mobile"
                      consists of nine pieces of trans-
                      lucent colored glass each of which
                      is suspended by wire from an over-
                      head rack designed to rotate about
                      a pivot in a horizontal plane.  The
                      suspension wires vary in length and
                      no two pieces of glass share the
                      same shape or outline.  Registra-
                      tion is sought in Class VA on the
                      basis of the overall effect pro-
                      duced by the play of light upon the
                      suspended glass components of a
                      work which the applicant describes
                      as "three-dimensional."  No copy-
                      rightable authorship is claimed in
                      the design of the individual pieces

503     Registration requirements for drawings, paint-
        ings, other pictorial works, and sculpture.
        (cont'd)

503.02      Copyrightable pictorial, graphic, and sculp-
            tural expression.  (cont'd)

503.02(b)       Minimal standards: sculptural material.
                (cont'd)

                Examples:  (cont'd)

                3)  (cont'd)

                    of glass.  Practice:  Registration
                    based upon the cumulative effect
                    produced by the component members
                    of the mobile will be refused.  If
                    these members had contained copy-
                    rightable authorship, registration
                    could have been considered on the
                    basis of the two-dimensional design
                    features displayed by the pieces of
                    glass.

503.03      Works not capable of supporting a copyright
            claim.  Claims to copyright in the following
            works cannot be registered in the Copyright
            Office:

503.03(a)       Works not originated by a human author.
                In order to be entitled to copyright
                registration, a work must be the product
                of human authorship.  Works produced by
                mechanical processes or random selection
                without any contribution by a human author
                are not registrable.  Thus, a linoleum
                floor covering featuring a multicolored
                pebble design which was produced by a
                mechanical process in unrepeatable, random
                patterns, is not registrable.  Similarly,
                a work owing its form to the forces of
                nature and lacking human authorship is
                not registrable; thus, for example, a
                piece of driftwood even if polished and
                mounted is not registrable.

[1984]

503        **Registration requirements for drawings, paintings, other pictorial works, and sculpture.** (cont'd)

503.03    **Works not capable of supporting a copyright claim.** (cont'd)

503.03(b)    **Works containing insufficient expression.** No registration is possible where the work consists solely of elements which are incapable of supporting a copyright claim. Uncopyrightable elements include common geometric figures or symbols, such as a hexagon, an arrow, or a five-pointed star, as pointed out in section 503.02(a) above.

503.03(c)    **Ideas and concepts.** Mere ideas and concepts cannot support a copyright claim. In order to be registrable, a work must contain original copyrightable expression. Thus, for example, neither the idea of folding a five-pointed star in a manner that enables it to stand upright, nor the star so folded is registrable.

504        **Registration requirements for two-dimensional useful articles, three-dimensional works of artistic craftsmanship, and models.** The registrability of two-dimensional useful articles is determined by the presence of at least a certain minimum amount of pictorial or graphic authorship. For three-dimensional works of artistic craftsmanship falling outside the definition of useful articles, such as jewelry, toys, and wall plaques, the authorship may be either sculptural or pictorial in nature, such as carving, cutting, molding, casting, shaping the work, arranging the elements into an original combination, or decorating the work with pictorial matter. Three-dimensional works of artistic craftsmanship are registrable either in assembled form, or in unassembled component pieces, as for example, an unassembled model airplane.

[1984]

504 **Registration requirements for two-dimensional useful articles, three-dimensional works of artistic craftsmanship, and models.** (cont'd)

504.01 **Material not subject to copyright.** Standard elements, as such, are not registrable. Thus, registration cannot be made for glassware devoid of copyrightable ornamentation, or for fabric designs consisting only of polka dots. Moreover, the mechanical or utilitarian aspects of a three-dimensional work of applied art are not subject to copyright protection. Hence, the serrated edge of a knife could not be the basis of a copyright registration.

504.02 **Examples.** The following are examples of the principles governing the registrability of such works:

1) A textile design consisting of nothing more than polka dots is not registrable. However, a representational image produced by the use of dots is registrable.

2) A jeweled pin consisting of three parallel rows of stones is not registrable, while a pin consisting of a sculpted bee is registrable.

3) A copyright claim in an original stuffed toy lion is registrable, while a plain red cushion shaped as a five-pointed star is not.

505 **Registration requirements for the shapes of three-dimensional useful articles.** Under the definition of "pictorial, graphic, and sculptural works" in the copyright law, the "design of a useful article" is copyrightable only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article. See 17 U.S.C. 101.

[1984]

505     Registration requirements for the shapes of
        three-dimensional useful articles.  (cont'd)

505.01     Definition of useful article.  A "useful
           article" is an article having an intrinsic
           utilitarian function that is not merely to
           portray the appearance of the article or
           to convey information.  An article that is
           normally a part of a useful article is
           considered a "useful article."  17 U.S.C.
           101. Examples of useful articles include
           automobiles, boats, household appliances,
           furniture, work tools, garments, and the
           like.

505.02     Separability test.  Registration of claims
           to copyright in three-dimensional useful
           articles can be considered only on the
           basis of separately identifiable pictorial,
           graphic, or sculptural features which are
           capable of independent existence apart from
           the shape of the useful article.  Determin-
           ation of separability may be made on either
           a conceptual or physical basis.

505.03     Separability test: conceptual basis.  Con-
           ceptual separability means that the pic-
           torial, graphic, or sculptural features,
           while physically inseparable by ordinary
           means from the utilitarian item, are never-
           theless clearly recognizable as a pictorial,
           graphic, or sculptural work which can be
           visualized on paper, for example, or as
           free-standing sculpture, as another
           example, independent of the shape of the
           useful article, i.e., the artistic features
           can be imagined separately and independently
           from the useful article without destroying
           the basic shape of the useful article.  The
           artistic features and the useful article
           could both exist side by side and be per-
           ceived as fully realized, separate works --
           one an artistic work and the other a useful
           article.  Thus, carving on the back of a
           chair, or pictorial matter engraved on a
           glass vase, could be considered for regis-
           tration.  The test of conceptual separa-
           bility, however, is not met by merely

[1984]

505          Registration requirements for the shapes of
             three-dimensional useful articles.  (cont'd)

505.03       Separability test: conceptual basis.
             (cont'd)

             analogizing the general shape of a useful
             article to works of modern sculpture, since
             the alleged "artistic features" and the
             useful article cannot be perceived as
             having separate, independent existences.
             ·The shape of the alleged "artistic fea-
             ·tures" and of the useful article are one
             and the same, or differ in minor ways; any
             differences are de minimis. The mere fact
             that certain features are nonfunctional or
             could have been designed differently is
             irrelevant under the statutory definition
             of pictorial, graphic, and sculptural works.
             Thus, the fact that a lighting fixture
             might resemble abstract sculpture would not
             transform the lighting fixture into a copy-
             rightable work.

505.04       Separability test: physical basis.  The
             physical separability test derives from the
             principle that a copyrightable work of
             sculpture which is later incorporated into
             a useful article retains its copyright pro-
             tection.  Examples of works meeting the
             physical separability test include a
             sculptured lamp base of a Balinese dancer,
             or a pencil sharpener shaped like an antique
             car.  However, since the overall shape of a
             useful article is not copyrightable, the
             test of physical separability is not met by
             the mere fact that the housing of a useful
             article is detachable from the working parts
             of the article.

505.05       Separability test: factors not relevant in
             determining registrability.  In applying the
             test of separability, the following are not
             relevant considerations:  1) the aesthetic
             value of the design, 2) the fact that the
             shape could be designed differently, or 3)
             the amount of work which went into the

[1984]

505          Registration requirements for the shapes of
             three-dimensional useful articles.  (cont'd)

   505.05       Separability test: factors not relevent in
                determining registrability.  (cont'd)

                making of the design.  Thus, the mere fact
                that a famous designer produces a uniquely
                shaped food processor does not render the
                design of the food processor copyrightable.

506          Prints.  "Prints" include a wide variety of
             pictorial prints and illustrations produced by
             means of lithography, photoengraving or other
             printing processes, including reproductions of
             representational and abstract designs and color
             reproductions of photographic prints.  Examples
             of such works include greeting cards, picture
             postcards, posters, decals, stationery, table
             place mats, advertisements, various kinds of
             wrappers, billboards, shopping bags, and labels.

   506.01       Registration requirements.  In order to be
                entitled to registration as a print, the
                work  must contain at least a certain
                minimum amount  of original pictorial or
                graphic authorship.

   506.02       Pictorial or graphic material.  Registra-
                tion is appropriate for original pictorial
                or graphic material, such as illustrations
                and representational or abstract design, as
                well as photographs reproduced in color by
                lithography, photoengraving, or other printing
                processes.  Although the copyrightability of
                such material does not depend upon artistic
                merit or aesthetic value, the material must
                contain at least a certain minimum amount of
                original pictorial or graphic expression to
                be eligible for registration.

   506.03       Uncopyrightable elements.  In determining
                the registrability of a print, the copy-
                right claim cannot be based solely upon
                mere variations of typographic ornamenta-
                tion, lettering, or coloring.  Likewise,
                the arrangement of type on a printed page
                cannot support a copyright claim.  However,

506        Prints.  (cont'd)

  506.03        Uncopyrightable elements.  (cont'd)

               if the type is so arranged as to produce a
               pictorial representation, the resulting
               image is registrable.  Thus, an advertise-
               ment which utilized lettering to achieve a
               pictorial representation of a person can be
               registered.

507        Reproductions of pictorial, graphic, or sculp-
           tural works.  Material comprising "reproductions
           of pictorial, graphic, or sculptural works" include
           reproductions of existing works of art.  Examples
           of such reproductions are photoengravings, collo-
           types, silk-screen prints, mezzotints, and three-
           dimensional reproductions of sculpture.

  507.01        Registration requirements.  In order to be
                registrable, an art reproduction must contain
                at least a certain minimum amount of original
                authorship.  This authorship may consist of
                drawing, lithography, photoengraving, etching,
                original sculpturing or molding, and the like.
                For example, a reproduction of Rodin's "Hand
                of God" achieved through sculpturing a minia-
                ture version of the original is registrable.

  507.02        Derivative works.  Art reproductions are
                derivative works because, by their nature,
                they are based on preexisting works.  Accord-
                ingly, a statement identifying the preexisting
                artistic work and indicating the nature of the
                authorship in the reproduction should be given
                in the appropriate spaces on the application
                form.  However, in those cases where the author
                and claimant of the reproduction are also the
                author and claimant of the original work of
                art that has been reproduced, and the original
                work has not been previously registered or
                published, registration should be made as
                an original pictorial, graphic, or sculptural
                work.

[1984]

507      **Reproductions of pictorial, graphic, or sculptural works. (cont'd)**

507.03      **Reproductions not capable of supporting a registration.** Claims to copyright in the following works cannot be registered in the Copyright Office:

507.03(a)      **Underlying work not a pictorial, graphic, or sculptural work.** Where the underlying work is not a pictorial, graphic, or sculptural work, no registration is possible on the basis of reproduction authorship. For example, a lithographic reproduction of a letter of the alphabet is not registrable.

507.03(b)      **Mechanical or photomechanical processes.** Reproductions made through the mere operation of mechanical or photomechanical processes are not registrable. For example, a photocopy of an original pen and ink drawing is not registrable as an art reproduction.

508      **Photographs, holograms, and individual slides.** Works considered for registration on the basis of photographic authorship include still photographic prints, holograms, and individual slides.

508.01      **Registration requirements.** To be entitled to copyright registration, a photograph, hologram, or slide must contain at least a certain minimum amount of original expression. Generally, original photographic or holographic authorship depends on the variety and number of the elements involved in the composition of the photograph or hologram. However, the nature of the thing depicted or the subject of the photograph or hologram, as distinguished from its composition or arrangement, is not regarded as a copyrightable element. Original photographic composition capable of supporting registration may include such elements as time and light exposure, camera angle or perspective achieved, deployment of light and shadow from natural or artificial light sources, and the arrangement or disposition of persons, scenery, or other subjects depicted in the photograph.

508          Photographs, holograms, and individual slides.
             (cont'd)

508.01          Registration requirements.  (cont'd)

                In the case of holography, original authorship
                depends largely upon the selection, arrange-
                ment, and disposition of scene and object.

508.02          Uncopyrightable works.  Where images are
                produced through the operation of mechanical
                or photomechanical processes with no appreciable
                element of artistic expression, the work is not
                registrable.

                Examples:

                1)  A microfilm merely reproducing public
                    domain textual matter is not registrable.

                2)  The photocopy of a public domain pictorial
                    work is not registrable.

509          Maps.  The term "map" refers to cartographic
             representations of area.  Common examples include
             terrestrial maps and atlases, marine charts, celes-
             tial maps, and such three-dimensional works as
             globes and relief models.

509.01          Registration requirements.  To be regis-
                trable, a map must contain at least a
                certain minimum amount of original carto-
                graphic material. Examples of original
                cartographic material  include drawings or
                pictorial representations of area based on
                original surveying or carto-graphic field
                work and compilations resulting from the
                original selection and arrangement of
                essentially cartographic features, such as
                roads, lakes or rivers, cities, political
                or geographic boundaries, and the like.

509.02          Compilations and derivative works.  The
                preparation of many maps involves the use
                of previously published source material to
                a significant degree, and the copyrightable

[1984]

509            **Maps.**  (cont'd)

509.02            <u>Compilations and derivative works</u>.  (cont'd)

authorship, therefore, is generally based
upon elements such as additional compilation
and drawing.  Additional authorship of this
kind may include cartographic representations
such as new roads, historical landmarks, or
zoning boundaries.  Where any substantial
portion of the work submitted for registra-
tion includes previously published or regis-
tered material, or material that is in the
public domain, statements describing both
the preexisting material as well as the new
copyrightable authorship should be given at
the appropriate spaces on the application
form. See Chapter 700: APPLICATIONS AND
FEES.

509.03            <u>Elements not capable of supporting a copy-</u>
<u>right</u>.  A mere reprint of public domain or
previously published material is not regis-
trable.  Likewise, a claim based upon an
obvious selection and arrangement of mater-
ials is not registrable.  For example, an
outline map of the United States containing
nothing more than the names of the state
capitals does not contain the necessary
authorship to support registration.

510            <u>Scientific works: architectural and technical</u>
<u>drawings and models</u>.  Material comprising sci-
entific works includes architectural blueprints,
mechanical drawings, engineering diagrams, astro-
nomical charts, anatomical models, scientific and
architectural models, and similar works.

510.01            <u>Registration requirements</u>.  In order to be
entitled to registration, architectural and
technical drawings must contain at least a
certain minimum amount of original graphic
or pictorial matter.  A scientific or archi-
tectural model must contain at least a certain
minimum amount of original sculptural material.

[1984]

**510**     **Scientific works: architectural and technical
            drawings and models.  (cont'd)**

510.02      **Uncopyrightable works**.  Claims to copyright
            in the following works cannot be registered in
            the Copyright Office:

510.02(a)        **Devices**.  Devices and similar articles,
                 designed for computing and measuring,
                 cannot be registered.  Common examples of
                 such works include slide rules, wheel dials,
                 and nomograms that contain insufficient
                 original literary or pictorial material.
                 The printed material of which a device
                 usually consists (lines, numbers, symbols,
                 calibrations, and their arrangement) cannot
                 be copyrighted, because this material is
                 necessarily dictated by the uncopyrightable
                 idea, principle, formula, or standard of
                 measurement involved.

510.02(b)        **Blank forms**.  Blank forms and similar
                 works which are designed for recording
                 information and do not in themselves con-
                 vey information, cannot be registered.
                 Common examples include: forms calibrated
                 for use in conjunction with a machine or
                 device, report forms, graph paper, account
                 books, scorecards, order forms, vouchers,
                 and the like.  See 37 C.F.R. 202.1(c).

510.03      **Ideas, processes, or systems**.  Copyright
            protection does not extend to ideas, pro-
            cesses, or systems.  Scientific or tech-
            nical works are registrable only if they
            contain the requisite  original copyright-
            able expression.  The following are not
            protectible by copyright and do not offer a
            basis for copyright registration: 1) ideas
            or procedures for doing, making, or build-
            ing things; 2) scientific or  technical
            discoveries or methods; 3) business
            operations or procedures; 4) mathematical
            principles; or 5) any other concept, pro-
            cess, method of operation, or plan of
            action.  See 17 U.S.C. 102(b).

[1984]

510    Scientific works: architectural and technical
       drawings and models.  (cont'd)

510.04    Subjects depicted.  Where registration is
          sought for a scientific or technical work,
          the application should describe only the
          authorship contained in the work and not
          bear any statements which suggest that
          registration extends to the subjects
          depicted.  Thus, the application for
          registration of a claim to copyright in an
          architectural drawing of a building should
          contain no statements which imply that the
          registration extends to the building.  See
          17 U.S.C. 113(b).


[END OF CHAPTER 500]


[1984]

625    Compilations. The subject matter of copyright
       includes compilations that as a whole constitute
       original works of authorship. The copyright in a
       compilation is independent of any copyright
       protection in the preexisting material. See 17
       U.S.C. 101, 102, and 103.

  625.01    Compilations: appropriate application form.
            Registration of a claim in a compilation
            should be made on the application form most
            appropriate to the preexisting material.
            However, the Copyright Office may accept a
            compilation claim on another one of the
            application forms for basic registration,
            provided that the form has some relationship
            to the category of material compiled.

  625.02    Compilations: registrable. A compilation is
            registrable if its organization, arrangement,
            or selection as a whole constitute an ori-
            ginal work of authorship.

            Examples:

            1)  Two Forms PA, each claiming in "Compila-
                tion" are received with a folio and a
                phonorecord containing the same 15
                musical selections. The order of the
                selections, however, is substantially
                different. The applications will be
                accepted.

            2)  Form SR claiming on "Compilation" is
                submitted for a recording of a new album
                entitled "Johnny Mash: Live at Billy
                Jack's." The Copyright Office will
                question whether the work contains an
                original compilation of previously
                recorded sounds since a live performance
                indicates that the sounds were recorded
                in a single continuous session.

625           <u>Compilations.</u>  (cont'd)

625.03        <u>Compilations: unregistrable.</u>  Where it appears that the compilation does not constitute an original work of authorship or that it is not subject to copyright protection for any other reason, the Copyright Office will refuse to register the claim.

Examples:

1) A compilation of two songs on a 45-rpm disc is submitted for registration. The Copyright Office will refuse to register the claim in a compilation.

2) A previously registered compilation is resubmitted as a new compilation. The authorship statement reads: "Last three selections deleted." The Copyright Office will refuse to register the claim.

3) A claim in compilation is submitted for a feature writer's weekly contribution to "The Times" over a period of six months. The compilation is arranged in chronological order. The Copyright Office will refuse to register the claim in a compilation.

4) Form TX is submitted with the complete published collection of Arthur Conan Doyle's Sherlock Holmes stories arranged chronologically. The Copyright Office will refuse to register the claim in a compilation.

625.03(a)     <u>Unregistrable compilations: unlawful employment of preexisting copyrighted material.</u>  Protection for a compilation employing preexisting material in which copyright subsists does not extend to any part of the work in which such material has been used unlawfully.  See 17 U.S.C.